E-FILED
Thursday, 20 February, 2025 04:09:48 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| ALANA HANNANT, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-04164-SLD |
| v. | ) | |
| SARAH D. CULBERTSON MEMORIAL HOSPITAL, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

4:24-cv-01464-SLD-RLH # 18 Filed: 02/21/25 Page 3 of 40

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. PLAINTIFF'S ALLEGATIONS ..... 2

III. ARGUMENT ..... 3

A. Motion to Dismiss Standard of Law ..... 3

B. Plaintiff's Federal Statutory Claims Fail ..... 4

1. Plaintiff Fails to State a Claim for Violation of the Electronic Communications Privacy Act ("ECPA") (Count IX) ..... 4

2. Plaintiff Fails to State a Claim for an Unauthorized Divulgence by Electronic Communications Service and a Violation of the Stored Communications Act ("SCA") (Counts X-XI) ..... 9

3. Plaintiff's Computer Fraud and Abuse Act ("CFAA") Claim Fails (Count XII) ..... 10

C. Plaintiff's Illinois Statutory Claims Fail ..... 13

1. Plaintiff's Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claims Fails (Count VII) ..... 13

2. Plaintiff's Claim for Violation of the Illinois Eavesdropping Statute ("IES") Fails (Count VIII) ..... 17

D. Plaintiff's Common Law Claims Fail ..... 18

1. Plaintiff Fails to State a Claim for Negligence (Counts I and II) ..... 18

2. Plaintiff Fails to State a Claim for Negligence Per Se (Count II) ..... 22

3. Plaintiff Fails to State a Claim for Invasion of Privacy (Count III) ..... 23

4. Plaintiff Fails to State a Claim for Breach of Implied Contract (Count IV) ..... 24

5. Plaintiff Fails to State a Claim for Unjust Enrichment (Count V) ..... 26

6. Plaintiff Fails to State a Claim for Breach of Implied Duty of Confidentiality (Count VI) ..... 28

IV. CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)....................................16, 17, 26

*Abbasi v. Paraskevoulakos*,
718 N.E.2d 181 (Ill. 1999)....................................................................................22

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....................................11

*Am. Hospital Ass'n v. Becerra*,
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)....................................6

*Andrews v. Prisma Health*,
No. 6:23-CV-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) ....................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................3, 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................................................................1, 4, 6

*Banco Panamericano, Inc. v. City of Peoria, Illinois*,
880 F.3d 329 (7th Cir. 2018) ....................................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................3

*Bell v. City of Country Club Hills*,
841 F.3d 713 (7th Cir. 2016) ....................................................................................3

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................................................................................13, 15

*Berry v. City of Chicago*,
181 N.E.3d 679 (Ill. 2020)....................................................................................18, 19

*BMO Harris Bank, N.A. v. Porter*,
106 N.E.3d 411 (Ill. App. Ct. 2018) ....................................................................................24

*Carlsen v. GameStop, Inc.*,
112 F. Supp. 3d 855 (D. Minn. 2015)....................................................................................20, 25

*Cowper v. Nyberg*,
28 N.E.3d 768 (Ill. 2015) ........................................ 18

*Cuyler v. United States*,
362 F.3d 949 (7th Cir. 2004) ........................................ 22

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) ........................................ 14

*Deck v. Courtney*,
No. 1:21-CV-01078-JPH-MJD, 2021 WL 3474043 (S.D. Ind. Aug. 6, 2021) ........................................ 12

*Desnick v. Am. Broadcasting Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ........................................ 6

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ........................................ 23, 25, 29

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ........................................ 15, 19, 22, 29

*Doe v. Genesis Health Sys.*,
No. 23-CV-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ........................................ 16, 23, 26, 29

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................................ 1, 4, 5

*Doe v. Upperline Health, Inc.*,
No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ........................................ 1, 6

*Doyle v. Holy Cross Hosp.*,
708 N.E.2d 1140 (Ill. 1999) ........................................ 25

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) ........................................ *passim*

*Gociman v. Loyola Univ. of Chicago*,
41 F.4th 873 (7th Cir. 2022) ........................................ 27

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........................................ 16, 20

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................ 8

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ........................................ 5, 23

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)....................7

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024)....................9

*In re Illinois Bell Tel. Link-Up II*,
994 N.E.2d 553 (Ill. App. Ct. 2013)....................25

*Insolia v. Philip Morris Inc.*,
216 F.3d 596 (7th Cir. 2000)....................29

*IPC Sys., Inc. v. Garrigan*,
No. 1:11-CV-3910-AT, 2012 WL 12872028 (N.D. Ga. May 21, 2012)....................10

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013)....................9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. Apr. 6, 2023)....................7

*Khorloo v. John C. Heath Att'y at L., PLLC*,
No. 18-CV-01778, 2020 WL 1530735 (N.D. Ill. Mar. 31, 2020)....................15

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010)....................15

*Kim v. McDonald's USA, LLC*,
No. 21-CV-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022)....................21

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023).................... *passim*

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023).................... *passim*

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024)....................7

*La Salle Nat. Bank v. Int'l Ltd.*,
263 N.E.2d 506 (Ill. App. Ct. 1970)....................24

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016)....................20, 28

*Liparota v. United States*,
471 U.S. 419 (1985)....................9

*Lozada v. Advoc. Health & Hosps. Corp.*,
2018 IL App (1st) 180320-U ....................26

*M.C. v. E. Side Health Dist.*,
No. 3:24-CV-01336-NJR, 2025 WL 435992 (S.D. Ill. Feb. 7, 2025) ....................23, 29

*Maglio v. Advoc. Health & Hosps. Corp.*,
40 N.E.3d 746 (Ill. App. Ct. 2015) ....................19, 21

*Modis, Inc. v. Bardelli*,
531 F. Supp. 2d 314 (D. Conn. 2008) ....................12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ....................1, 4, 6, 11

*Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*,
486 F.3d 989 (7th Cir. 2007) ....................24

*Oliveira v. Amoco Oil Co.*,
201 776 N.E.2d 151 (Ill. 2002) ....................14, 15

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ....................4

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................28

*Petta v. Christie Bus. Holding Co., P.C.*,
230 N.E.3d 162 (Ill. App. Ct. 2023) ....................19, 20, 21

*Petta v. Christie Bus. Holdings Co., P.C.*,
__ N.E.3d__, 2025 IL 130337 (Ill. Jan. 24, 2025) ....................19

*Pisciotta v. Old Nat. Bancorp*,
499 F.3d 629 (7th Cir. 2007) ....................28

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................5, 6

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ....................16

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ....................20, 28

*Rockford Mem'l Hosp. v. Havrilesko*,
858 N.E.2d 56 (Ill. App. Ct. 2006) ....................14

*Rodriguez v. FastMed Urgent Care, P.C.*,
No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024)........................................5

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)................2, 4, 7

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
869 F.3d 568 (7th Cir. 2017) ...............................................................................................28

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ...........................................................................................20, 22

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................................................................................6

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ...............................................................................................1

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) .......................................16, 26

*St. Johns Vein Center, Inc. v. StreamlineMD LLC*,
347 F. Supp. 3d 1047 (M.D. Fla. 2018).................................................................................10

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ...............................................................................................28

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ................................1

*Test Drilling Serv. Co. v. Hanor Co.*,
322 F. Supp. 2d 957 (C.D. Ill. 2003) .....................................................................................22

*Troutt v. Mondelez Glob. LLC*,
637 F. Supp. 3d 606 (S.D. Ill. 2022)......................................................................................13

*United States v. Caira*,
833 F.3d 803 (7th Cir. 2016) .................................................................................................9

*United States v. Mitrovich*,
95 F.4th 1064 (7th Cir. 2024) .................................................................................................9

*Van Buren v. United States*,
593 U.S. 374 (2021)........................................................................................................11, 12

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2021) ...............................................................................................26

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
12 F.4th 665 (7th Cir. 2021) ....................................................................................21

*White v. DaimlerChrysler Corp.*,
856 N.E.2d 542 (Ill. App. Ct. 2006) ..........................................................................14

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ..................4, 6, 7

*Zak v. Bose Corp.*,
No. 17-CV-02928, 2020 WL 2762552 (N.D. Ill. May 27, 2020) ...........................................18

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................................................................................8, 9

**Statutes**

720 ILCS 5/14-1 ..........................................................................................................17

720 ILCS 5/14-2 ..................................................................................................17, 18

735 ILCS 5/8-802 ........................................................................................................29

815 ILCS 505/2............................................................................................................14

815 ILCS 505/10a ........................................................................................................15

815 ILCS 530/5............................................................................................................16

18 U.S.C. § 1030....................................................................................10, 11, 12

18 U.S.C. § 2510..............................................................................................................8

18 U.S.C. § 2511.............................................................................................4, 5, 10

18 U.S.C. § 2711............................................................................................................10

## I. <u>INTRODUCTION</u>

Healthcare providers, like Sarah D. Culbertson Memorial Hospital ("CMH"), are being sued en masse for alleged privacy violations based on their publicly accessible websites. But federal courts across the country, including in Illinois, have rejected these specious lawsuits. And this case should be no different.

As in those other cases, the basis for Plaintiff Alana Hannant's ("Plaintiff") Amended Class Action Complaint (ECF No. 14, "Amended Complaint" or "FAC") is that CMH installed certain third-party source code on its publicly accessible website. Plaintiff then alleges that this third-party source code caused visitors' web browsers to disclose information about visitors' browsing activities on the website to third parties, including Facebook. FAC ¶¶ 1, 10.

Plaintiff's case is fundamentally flawed, however. First, her Amended Complaint relies on hypotheticals, not factual allegations. Indeed, Plaintiff does not allege any transfer of metadata specific to her purported use of CMH's website. She merely speculates that CMH could have disclosed browsing information for a hypothetical user who visits its website while simultaneously logged into Facebook. Moreover, notwithstanding the absence of plaintiff-specific allegations, courts routinely find that "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history."[1] For this reason, other federal courts addressing virtually identical allegations have

[1] *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), *affirming Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) ("These pages contain general information that is accessible to the public at large."); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024); *Doe v. Upperline Health, Inc.*, No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024); *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024); *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part,* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024

rejected the same types of allegations and claims asserted by Plaintiff here. Put simply, public browsing information is not protected health information ("PHI") nor is it personally identifiable information ("PII"). As such, Plaintiff's Amended Complaint fails to state an actionable claim.

## II. PLAINTIFF'S ALLEGATIONS[2]

CMH is a non-profit hospital system in Rushville, Schuyler County, Illinois. FAC ¶¶ 34, 38. CMH maintains a public website at https://cmhospital.com/ (the "Website"). *Id.* ¶ 10. Through the Website, users—including patients and non-patients alike—are able to learn about the hospital system, find medical providers and services, access a patient portal, pay bills, and search for treatment information. *Id.* ¶ 11.

Plaintiff alleges that she has been a patient of CMH for approximately two years, and that she used the Website beginning around November 2021 and last in September 2023. *Id.* ¶¶ 33, 132-33. Specifically, Plaintiff alleges that she used the Website to find a physician, to research treatments, including information related to an MRI test, to search for treatment information, to find out how to access medical records, to use the patient portal, and "more." *Id.* ¶ 134. Beyond that, Plaintiff resorts to speculation.

Plaintiff speculates that CMH's Website, using possibly one or more website technologies, disclosed her and other putative class members' PHI. For instance, "[o]n information and belief," Plaintiff alleges CMH disclosed information regarding Plaintiff's page and content views, seeking of medical treatment, status as a patient, information regarding Plaintiff's patient portal activity, and additional information to third parties "via the Meta Pixel and other tracking technologies . . . without authorization." *Id.* ¶¶ 140, 142. As pled, Meta Pixel is a tool on webpages that duplicates

WL 1589982 (N.D. Cal. Apr. 11, 2024); *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).

[2] For purposes of this Motion only, CMH accepts as true the factual allegations in Plaintiff's Amended Complaint.

and transmits user communications with a webpage and sends those to Facebook. *Id.* ¶ 49. Plaintiff also speculates that CMH "potentially" used another type of pixel, Conversions API, and "on information and belief," that CMH used other trackers, like Google Analytics, DoubleClick Ads, and Microsoft Clarity, all of which allegedly transmitted information to third parties. *Id.* ¶¶ 69-71. Plaintiff then generally concludes, "[o]n information and belief, Culbertson shared, traded, or sold Plaintiff's and Class Members' Private Information with Facebook in exchange for improved targeting and marketing services and reduced marketing costs." *Id.* ¶ 127.

Missing from the Amended Complaint, however, are plausible factual allegations that a Meta Pixel on CMH's Website did disclose confidential personal information to third parties and—most importantly—did so with respect to Plaintiff.

## III. ARGUMENT

### A. Motion to Dismiss Standard of Law

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The motion should be granted if the allegations in the complaint, even when accepted as true and viewed in the light most favorable to the plaintiff, "could not raise a claim of entitlement to relief." *Id.* at 558. While Plaintiff is not required to provide "detailed factual allegations," the complaint must not merely state "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell v. City of Country Club Hills*, 841 F.3d 713, 716-17 (7th Cir. 2016).

### B. Plaintiff's Federal Statutory Claims Fail

#### 1. Plaintiff Fails to State a Claim for Violation of the Electronic Communications Privacy Act ("ECPA") (Count IX)

Plaintiff alleges CMH violated the ECPA, 18 U.S.C. § 2511(1)(a), (c), (d), through an unauthorized interception, use, and disclosure of her "Private Information." FAC ¶¶ 342-46. Each of Plaintiff's theories "require[] a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Nienaber*, 733 F. Supp. 3d at 1094 (quotation marks omitted). Courts analyzing virtually identical allegations have rejected the same ECPA claims that Plaintiff pleads here. *See id.*; *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, *3-5 (D. Ariz. Sept. 30, 2024); *Eisenhower*, 721 F. Supp. 3d at 1064-66; *Amgen*, 2024 WL 2873482, *6; *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, *8-10; *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 936-38 (N.D. Ill. 2023) ("*Kurowski I*"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 842-44 (N.D. Ill. 2023) ("*Kurowski II*"). For the same reasons, Plaintiff fails to sufficiently plead each indispensable element of an ECPA claim.

##### a. Plaintiff Fails to Allege Any Unlawful Interception

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication"). CMH was allegedly a party to (and intended recipient of) the alleged communications on the Website. *See* FAC ¶¶ 12, 22, 70. "Because Defendant was the party that was meant to, and did, receive Plaintiffs' communications on the [Public] Website, under the party exception, 'any alleged interception of the communication is not actionable.'" *Eisenhower*, 721 F. Supp. 3d at 1065 (quoting *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023));

*see also Kurowski I*, 659 F. Supp. 3d at 938; *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, *1 (N.D. Ill. Nov. 8, 2023).

**b. The Crime-Tort Exception Does Not Apply**

Plaintiff attempts to evade the party exception by alleging that CMH acted with a criminal or tortious purpose (advertising and violating the Health Insurance Portability and Accountability Act ("HIPAA")).[3] FAC ¶ 352. Courts apply the crime-tort exception only "where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski II*, 683 F. Supp. 3d at 844; *see also Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 136 (9th Cir. 2022) (stating the "criminal or tortious purpose must be separate and independent from the act of recording."). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Planned Parenthood*, 51 F.4th at 1136 (emphasis in original).

As pled, CMH intercepted and disclosed Plaintiff's web browsing history "for commercial gain," not to violate HIPAA, violate the Federal Trade Commission Act ("FTC Act"), or commit an invasion of privacy tort. FAC ¶¶ 20, 29, 44, 91, 348. But "merely alleging that [CMH] intercepted and disclosed [Plaintiff's] information to Meta for commercial use or gain . . . does not equate to [CMH] intercepting and disclosing [her] information 'for the purpose of committing any criminal or tortious act'" under the ECPA. *Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582, *6 (E.D.N.C. July 24, 2024) (quoting 18 U.S.C. § 2511(2)(d)); *see also Kaiser*, 2024 WL 1589982, *10 (identifying in tracking technology context that "[v]iolation of HIPAA was not the purpose of the alleged interception.").

[3] Notably, Plaintiff's allegations that CMH acted with the purpose of "increas[ing] its profit margins" are belied by her acknowledgment that CMH "is a non-profit corporation." FAC ¶¶ 34, 348.

Moreover, the disclosure of Internet metadata on a publicly accessible website is neither criminal nor tortious. *See Am. Hospital Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, *13 (N.D. Tex. June 20, 2024) ("[I]nformation cannot become [PHI] based solely on the visitors' subjective motive for visiting the page"); *id.* at *14 ("Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) ("[N]othing about [Internet metadata] information relates specifically to Plaintiff's health' and that the information is "general health information that is accessible to the public at large"); *see also TMC Health*, 2024 WL 4364150, *4 (visiting a public website "does not *necessarily* implicate HIPAA") (emphasis in original); *Upperline*, 2024 WL 4953503, *3 ("There is nothing about that browsing activity that related specifically to *her* health or relationship with Upperline.") (citing *Facebook*, 262 F. Supp. 3d at 954-55).

Further, Plaintiff cannot bifurcate the same conduct to create a separate, independent criminal or tortious purpose. In other words, Plaintiff cannot plead that CMH violated HIPAA and the FTC Act as both the purpose of her ECPA claim as well as the purpose for the interception, disclosure, and intended use elements. FAC ¶¶ 16, 343-44, 352. Courts have rejected this tactic when analyzing virtually identical claims. *See Eisenhower*, 721 F. Supp. 3d at 1065 ("a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself") (emphasis in original). Accordingly, because the criminal or tortious act of violating HIPAA is not "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits," Plaintiff fails "to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission." *Nienaber*, 733 F. Supp. 3d at 1096; *Planned Parenthood*, 51 F.4th at 1136; *see also Desnick v. Am.*

*Broadcasting Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (finding no criminal purpose in a recording when defendant did not record plaintiff *for the purpose* of committing a crime or tort).

To try to save this claim, Plaintiff may point to two recent decisions by the Northern District of Illinois where ECPA claims in similar cases survived a motion to dismiss, after several repleading attempts. Unlike this case, the plaintiffs in those cases specifically pled that their PHI within the patient portal (which is not publicly accessible) was transmitted to third parties. *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2024 WL 3455020, *4-5 (N.D. Ill. July 18, 2024); *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2024 WL 1886909, *2 (N.D. Ill. Apr. 30, 2024). In contrast, the Amended Complaint omits facts even suggesting that Plaintiff's doctor-patient communications within the CMH patient portal, medical records, or test results were actually disclosed to third parties.

In sum, the crime-tort exception does not apply here because these alleged criminal or tortious actions are not separate and independent from the alleged interception, disclosure, or intended use. *TMC Health*, 2024 WL 4364150, *4. Stated differently, "all the facts Plaintiffs alleged regarding Defendant's purpose in intercepting the communication point to one conclusion—a non-criminal, non-tortious purpose": commercial gain. *TMC Health*, 2024 WL 4364150, *4; *see, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, at 945 (N.D. Cal. Apr. 6, 2023) (dismissing ECPA claim because defendant's desire to "make money" was not sufficient under the crime-tort exception); *Amgen*, 2024 WL 2873482, *6 ("[T]he crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally.").

**c. Plaintiff Does Not Adequately Allege Intercepted Contents**

Plaintiff fails to plausibly plead that the "contents" of her communications via the Website were intercepted and disclosed to third parties. Under the ECPA, "contents" is defined as "any

information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(8). Courts distinguish between "content" and "record" information. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (concluding "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer). For instance, the Ninth Circuit has explained that a URL can disclose that a person viewed a certain webpage, yet still "function[] like an 'address,'" and not "contents" of a communication. *Id.* at 1107-08; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (concluding that even if Google could "infer a user's traits and habits" from URLs related to the user's searches, "'educated guesses' about a user's traits and habits," do not amount to "contents" of the communications).

Despite conclusory characterizations that CMH shares the "contents" of her "communications" with third parties, what Plaintiff really describes is the alleged sharing of a website URL, i.e., the address of the pages visited on the public Website by users who may or may not have any relationship with CMH, by transmission of "SubscribedButtonClick" events. FAC ¶¶ 96-109. Moreover, the Amended Complaint only includes allegations regarding a hypothetical user's experience on the Website, as opposed to allegations specific to Plaintiff and her experience. *See, e.g., id.* ¶¶ 113-14. Plaintiff tries to link her searches on CMH's Website with advertisements that allegedly appeared on her Facebook page. *Id.* ¶¶ 134-35. But her mere use of the Website does not provide a plausible factual basis that any "contents" of private communications were disclosed to third parties. Significantly, Plaintiff does not (and cannot) plead any facts showing that her communications <u>within</u> the patient portal were transmitted to any third party.

To the extent courts have suggested that some URLs can rise to the level of a communication, the rule of lenity requires the ambiguity to be resolved in CMH's favor. "[A]pplication of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal." *Liparota v. United States*, 471 U.S. 419, 427 (1985); *see also Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) ("Although this is a civil suit, the Wiretap Act also carries criminal penalties so [] reliance on the rule of lenity is not unfounded."). Because courts have concluded that URL information can still function like an address and not amount to "contents" of a communication, *In re Zynga*, 750 F.3d at 1107, there is not fair warning concerning the alleged illegality of the use of tracking technology, especially in today's society in which there is a robust marketplace for online browsing data. *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*.") (emphasis in original). Further, under Seventh Circuit precedent, there is no reasonable expectation of privacy in an IP address. *United States v. Mitrovich*, 95 F.4th 1064, 1068 (7th Cir. 2024) ("a person has no reasonable expectation of privacy in their IP address because they voluntarily share it with third parties while browsing the internet."); *United States v. Caira*, 833 F.3d 803, 809 (7th Cir. 2016) ("Because Caira voluntarily shared his I.P. addresses with Microsoft, he had no reasonable expectation of privacy in those addresses.").

**2. Plaintiff Fails to State a Claim for an Unauthorized Divulgence by Electronic Communications Service and a Violation of the Stored Communications Act ("SCA") (Counts X-XI)**

Plaintiff's ECPA claim for an unauthorized divulgence is improper because CMH is not an electronic communications service provider. The ECPA provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication . . . while in transmission on that service to any person or entity other than an

addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a). An "electronic communication service" is defined as "any service which provides the users thereof the ability to send or receive wire or electronic communications." *Id.* at § 2510(15). The definition of "electronic communication service" is the same under the ECPA and the SCA and both statutes require the defendant to be a provider of an "electronic communication service." 18 U.S.C. § 2711(1); *id.* at § 2702(a)(1); *id.* at § 2511(3)(a).

Here, CMH is a nonprofit hospital system, not an electronic communications service. FAC ¶ 38. The "majority of courts addressing [the statute's scope] interpret the ECPA . . . to encompass only traditional 'electronic communications services' such as internet service providers, electronic mail providers, telecommunications companies, and remote computing services." *St. Johns Vein Center, Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1064 (M.D. Fla. 2018) (alteration in original); *Kurowski I*, 659 F. Supp. 3d at 940 ("[C]ompanies that merely purchase or use electronic communications services in the conduct of their ordinary business are not themselves electronic communications services."). Having a public website does not transform CMH into a service provider under the ECPA or SCA. *See St. Johns*, 347 F. Supp. 3d at 1064. Courts distinguish "those entities that sell access to the internet from those that sell goods and services on the internet or otherwise make use of internet services to conduct their day to day business activities." *IPC Sys., Inc. v. Garrigan*, No. 1:11-CV-3910-AT, 2012 WL 12872028, *9 (N.D. Ga. May 21, 2012). CMH falls into the latter category and is thus not an "electronic communications service." Plaintiff does not plausibly allege facts to show otherwise.

### 3. Plaintiff's Computer Fraud and Abuse Act ("CFAA") Claim Fails (Count XII)

The CFAA applies only to one who "intentionally accesses a computer without authorization or exceeds access . . . ." 18 U.S.C. § 1030(a)(2). Plaintiff fails to plead facts to show

the essential element of a CFAA claim—that CMH exceeded "authorized access." The Supreme Court noted that, under the CFAA, "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting 18 U.S.C. § 1030(e)(6)). In *Van Buren*, the Court clarified its narrow interpretation, stating "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 396. The Court *explicitly* rejected a broad interpretation that would effectively "criminalize[] every violation of a computer-use policy" because "then millions of otherwise law-abiding citizens are criminals." *Id.* at 394.

*Van Buren* forecloses Plaintiff's CFAA claim because Plaintiff does not allege that CMH reached into any "off-limits areas" of her or other potential class members' computers—a required element of a CFAA claim. *Compare* FAC ¶¶ 384-88, *with Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, *5 (M.D.N.C. Aug. 24, 2023) (dismissing a CFAA claim in tracking technology case because "[t]he plaintiffs do not allege that Novant accessed 'information located in particular areas' of the plaintiffs' computers 'that [were] off limits'"), *and Nienaber*, 733 F. Supp. 3d at 1096-97.

Even if this Court found that Plaintiff plausibly alleged that CMH exceeded authorized access to her and the other class members' computers, Plaintiff's CFAA claim fails because she has not alleged the statutory "loss" or "damage" required to state a civil claim. Civil liability under the CFAA is limited to a "person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g). Additionally, "[a] civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or

(V) of subsection (c)(4)(A)(i).” 18 U.S.C. § 1030(g). In this case, Plaintiff relies on subclauses (I) and (IV), FAC ¶¶ 386-87, which require: “(I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value” and “(IV) a threat to public health or safety.” *See* 18 U.S.C.§§ 1030(c)(4)(A)(i)(I), (IV).

Plaintiff fails to allege that she suffered any plausible “damage” or “loss” under the CFAA. “Damage” is defined as “any impairment to the integrity or availability of data, a program, a system, or information.” 18 U.S.C. § 1030(e)(8). Similarly, loss is defined as “any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]” *Id.* at § 1030(e)(11). “The statutory definitions of ‘damage’ and ‘loss’ thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting ‘damage’ and ‘loss’ in this way makes sense in a scheme ‘aimed at preventing the typical consequences of hacking.’” *Van Buren*, 593 U.S. at 391-92. Thus, “[w]ithout a harm relating to computer impairment or computer damage, [Plaintiff’s] allegations cannot constitute a ‘loss’ under the [CFAA].” *Deck v. Courtney*, No. 1:21-CV-01078-JPH-MJD, 2021 WL 3474043, *1 (S.D. Ind. Aug. 6, 2021).

Plaintiff alleges in a conclusory fashion that non-technological related damages aggregate to at least $5,000 in value. FAC ¶ 386. But this allegation is not a technological harm, thereby failing to meet the statutory definition of “loss” under the CFAA. 18 U.S.C. § 1030(e)(11). When faced with similar conclusory allegations of loss, other courts have dismissed CFAA claims. *See, e.g.*, *Modis, Inc. v. Bardelli*, 531 F. Supp. 2d 314, 319-20 (D. Conn. 2008).

Plaintiff's claim for relief under § 1030(c)(4)(A)(i)(IV) also fails. Plaintiff's allegation that CMH's conduct constitutes "a threat to public health or safety" due to Plaintiff's Internet metadata being made available to CMH and third parties without adequate legal privacy protections is conclusory and insufficient to state a claim for relief. FAC ¶ 387. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, Plaintiff's CFAA claim should be dismissed.

### C. Plaintiff's Illinois Statutory Claims Fail

#### 1. Plaintiff's Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claims Fails (Count VII)

Count VII of Plaintiff's Amended Complaint brings a claim under the ICFA. FAC ¶¶ 290-309. This count, in turn, also contains two distinct theories of liability. First, Plaintiff alleges CMH engaged in "deceptive acts or practices." *Id.* at ¶ 295. Second, Plaintiff pleads a claim for alleged "unfair" acts or practices. *Id.* Both of Plaintiff's ICFA theories appear to be grounded in CMH's alleged use of Pixel technology, resulting in its receipt of targeted marketing. *Id.*

To plead a successful ICFA claim, a plaintiff must allege facts plausibly showing "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). But the Amended Complaint fails to sufficiently allege these requisite elements.

As an initial matter, Plaintiff's deceptive practices should be dismissed for failure to adequately allege how any statement CMH made is deceptive under Rule 9(b). *Troutt v. Mondelez Glob. LLC*, 637 F. Supp. 3d 606, 613 (S.D. Ill. 2022) ("As this claim relates to deceptive conduct (as opposed to unfair conduct), the heightened pleading standard in [Rule 9(b)] applies."). As the Illinois Appellate Court has held: "The bald assertion of deception is insufficient to state a claim;

the deceptive manner of the omission must be stated with specificity and particularity." *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 64 (Ill. App. Ct. 2006); *see also, e.g., White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 547 (Ill. App. Ct. 2006) ("A complaint alleging a consumer fraud violation must be pled with the same particularity and specificity as that required under common law fraud.").

Moreover, the Illinois Supreme Court has held, repeatedly, that a plaintiff must allege personal deception to state an ICFA claim. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (collecting cases) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."); *Oliveira v. Amoco Oil Co.*, 201 776 N.E.2d 151, 164 (Ill. 2002) ("[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived.").

Plaintiff's Amended Complaint contains allegations regarding her individual interactions with CMH. FAC ¶¶ 132-42. But Plaintiff does not allege she was personally deceived by any of CMH's alleged deceptions. Plaintiff's ICFA claim grounded in alleged deceptive acts or practices should be dismissed for this reason alone. *See Oliveira*, 776 N.E.2d at 158 ("Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance.").

Plaintiff's ICFA claim also fails, for both alleged consumer unfairness and for alleged consumer deception, because she does not allege actual damages. As the Illinois Supreme Court held: "Unlike an action brought by the Attorney General under section 2, which does not require that 'any person has in fact been misled, deceived or damaged,' (815 ILCS 505/2 (West 1996)), a

private cause of action under section 10a(a) requires proof of 'actual damage' (815 ILCS 505/10a(a))." *Oliviera*, 776 N.E.2d at 160. This requires actual "pecuniary loss." *Benson*, 944 F.3d at 647; *see also, e.g., Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'"); *Flores v. Aon Corp.*, 242 N.E.3d 340, 357 (Ill. App. Ct. 2023) ("The failure to allege specific economic damages precludes a claim brought under the Consumer Fraud Act.").

Plaintiff cannot meet this requirement under either prong of her statutory claims because Plaintiff does not allege any damages specific to her. Instead, she relies entirely on generic allegations of damages that Plaintiff and putative class members have overpaid for their health care services, suffered a diminished value of their personal information, and that CMH somehow harmed their privacy interests. FAC ¶ 142. Yet the use of the Website is free. Thus, the only actual loss Plaintiff alleges anyone has suffered is an alleged loss of privacy, which is not the purview of the ICFA. *See Kurowski I*, 659 F. Supp. 3d at 942 ("There is no basis under Illinois law to suggest that Kurowski is entitled to claim a 'privacy injury' under ICFA."); *Khorloo v. John C. Heath Att'y at L., PLLC*, No. 18-CV-01778, 2020 WL 1530735, *2 (N.D. Ill. Mar. 31, 2020) ("It seems unlikely that the statute allows plaintiffs to recover damages for privacy violations because the ICFA is concerned with fraudulent or unfair advertising, not with individual privacy rights."); *Flores*, 242 N.E.3d at 357 (holding that alleged "emotional distress due to [] loss of privacy" is not a "specific economic damage[] required for a claim under the Consumer Fraud Act").

Moreover, even outside this context, the Seventh Circuit has repeatedly rejected each of Plaintiff's damages theories as being cognizable, even to provide federal standing to sue. *See, e.g., Dinerstein v. Google, LLC*, 73 F.4th 502, 517-18 (7th Cir. 2023) ("[W]e're not inclined to extend the overpayment theory of injury to novel contexts. . . . We are even more skeptical of Dinerstein's

second pecuniary theory—that the unauthorized use of his medical information conferred a financial benefit on the University to which he is entitled."); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) ("[Plaintiff's] strangest argument is that 'his personal information [secreted in Time Warner's files] has economic value; . . . and Defendant's unlawful retention of Plaintiff's personal information . . . deprived Plaintiff of the full value of his transaction with Defendant. . . .' This is gibberish."); *see also Doe v. Genesis Health Sys.*, No. 23-CV-4209-JES-JEH, 2024 WL 3890164, *14 (C.D. Ill. Aug. 21, 2024) (holding that the alleged "loss of privacy, unauthorized disclosure of and access to [plaintiff's] Private Information to third parties, use of her Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution of the value of her Private Information, lost benefit of her bargain, and increased risk of future harm from further unauthorized use and disclosure of her information" did not provide a basis for actual damages required to state an ICFA claim); *accord A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, *7-8 (N.D. Ill. Sept. 9, 2024); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, *8 (N.D. Ill. July 9, 2024); *Kurowski II*, 683 F. Supp. 3d at 845-47.

Lastly, Plaintiff attempts to shoehorn an alleged violation of the Illinois Personal Information Protection Act ("PIPA") into an ICFA violation. FAC ¶¶ 298-305. But PIPA applies to data breaches. *See* 815 ILCS 530/5 (defining "Breach of the security of the system data" or "breach" to mean "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the data collector"); *accord Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 849 (N.D. Ill. 2024) (holding PIPA did not prohibit defendant from collecting and tracking data in online database of public and non-public consumer information). Thus, PIPA does not provide a basis for Plaintiff's ICFA claim.

### 2. Plaintiff's Claim for Violation of the Illinois Eavesdropping Statute ("IES") Fails (Count VIII)

Count VIII of Plaintiff's Amended Complaint brings a claim under the IES. FAC ¶¶ 310-33. The IES prohibits knowingly, intentionally, and surreptitiously using an "eavesdropping device" "for the purpose of transmitting or recording all or part of any *private conversation* to which he or she is a party unless he or she does so with the consent of all other parties to the *private conversation*." 720 ILCS 5/14-2(a)(2) (emphasis added). Plaintiff cannot state a claim under 720 ILCS 5/14-2(a)(2) because the statute only applies to oral communications. 720 ILCS 5/14-1(d) (defining "private conversation" as "any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means"). The Northern District of Illinois recently granted a motion to dismiss in a similar case based on the text of the statute, which separately defines "private electronic communication" to mean "any transfer of . . . writing, images, sounds, data, or intelligence or any nature transmitted in whole or in part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system." *Aspen Dental*, 2024 WL 4119153, *4 (quoting 720 ILCS 5/14-1(e)). The plaintiff there brought a claim based on the same alleged practice of transmitting personal information via ad technologies and brought claims based on 720 ILCS 5/14-2(a)(2) and (a)(5). The court explained the "difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data and appointment scheduling information at issue here." *Aspen Dental*, 2024 WL 4119153, *4. The court "conclude[d] that 720 ILCS 5/14-1(d) does not apply to the electronic communications about which Plaintiffs complain." *Id.* The Court should hold the same here and dismiss Plaintiff's claim.

Plaintiff also brings a claim for violation of 720 ILCS 5/14-2(a)(5), which prohibits knowingly and intentionally using or disclosing "any information which he or she knows or

reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." Like the federal ECPA, the IES sets forth a one-party consent rule. *See* 720 ILCS 5/14-2(a)(3); *Zak v. Bose Corp.*, No. 17-CV-02928, 2020 WL 2762552, *3 (N.D. Ill. May 27, 2020) (dismissing IES claim because the defendant was a party to the communications). But unlike the ECPA, there is no criminal or tortious exception to the party exception. *See, e.g., Kurowski II*, 683 F. Supp. 3d at 853. As explained above, this claim also fails because CMH allegedly was a party to (and intended recipient of) the alleged communications on the Website.

### D. Plaintiff's Common Law Claims Fail

#### 1. Plaintiff Fails to State a Claim for Negligence (Counts I and II)

Plaintiff alleges two forms of negligence: Count I for negligence and Count II for negligence *per se*. FAC ¶ 225-46. Both of Plaintiff's negligence claims fail because Plaintiff does not allege any injury compensable in tort.

To prevail on her negligence claims, Plaintiff must establish: "that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015). "The wrongful or negligent act of the defendant, by itself, gives no right of action to anyone. Until the defendant's wrongful or negligent act produces injury to the plaintiff's interest by way of loss or damage, no cause of action accrues." *Berry v. City of Chicago*, 181 N.E.3d 679, 688 (Ill. 2020).

Here, Plaintiff alleges the following injuries: (i) increased risk of future harm and "lost time and money incurred to mitigate and remediate the effects of use of her information" for targeted advertisements; (ii) diminution in value of her personal information, which is purportedly worth less due to CMH's conduct; (iii) "lost benefit of her bargain"; (iv) "embarrassment, humiliation, frustration, and emotional distress" from loss of privacy or control of her personal

information; and (v) use of her private information for advertising purposes. FAC ¶¶ 231-32, 244. None of these theoretical injuries are compensable in a tort action.

First, Illinois courts, including the Illinois Supreme Court, have routinely held that allegations of increased future risks of harm following data security incidents involving personal information are too speculative to state a cognizable injury for standing, much less to recover damages. *See Petta v. Christie Bus. Holdings Co., P.C.*, __ N.E.3d__, 2025 IL 130337, ¶ 21 (Ill. Jan. 24, 2025) (holding that allegations plaintiff and putative class members "faced only an *increased risk* that their private personal data was accessed by an unauthorized third party" were "insufficient to confer standing" to bring claims for monetary damages); *Berry*, 181 N.E.3d at 688 ("[A]n increased risk of harm is not, for purposes of tort law, an injury."); *Maglio v. Advoc. Health & Hosps. Corp.*, 40 N.E.3d 746, 753 (Ill. App. Ct. 2015) ("[Plaintiffs'] claims that they face an increased risk of, for example, identity theft are purely speculative and conclusory, as no such identity theft has occurred to any of the plaintiffs."). "Any threatened injury must be 'certainly impending' or must create a 'substantial risk' of harm, as opposed to being merely 'possible.'" *Petta v. Christie Bus. Holding Co., P.C.*, 230 N.E.3d 162, 169 (Ill. App. Ct. 2023) ("Thus, based upon *Maglio* and the reasoning therein, we also find that Doe's claims of an 'increased risk of identity theft' and her damages of 'time and effort' in monitoring and combating potential identity theft are simply too speculative."); *see also Dinerstein*, 73 F.4th at 515 ("To the extent that Dinerstein rests his claim for damages on allegations of future risk, the argument is a nonstarter."). Thus, more than increased risk of future harm is required under Illinois law to state the elements of a negligence claim.

Second, courts routinely reject the diminished value of personal information theory. Plaintiff generally alleges that she experienced lost or diminished value of her private information

as a result of the incident. FAC ¶ 232. But Illinois state and federal courts have thoroughly rejected diminution in the value of personal information as a viable theory of damages. *See Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015) ("Plaintiffs have pled that Defendants profited from the sale of their PII, but they did not establish how this profiteering deprived them of the economic value of this information."); *Petta*, 230 N.E.3d at 169 ("First, this court does not find that a person's personal information is 'property.' . . . Additionally, even if such a right did exist, we cannot determine any nonspeculative way to assess the diminution in value of the property right."). As the Honorable Richard Posner stated, in affirming the dismissal of a data-breach claim for lack of standing, such allegations are "gibberish." *Gubala*, 846 F.3d at 913. Plaintiff's Amended Complaint presents no reason for this Court to accept the diminished value theory that the Seventh Circuit has repeatedly rejected.

Third, the benefit of the bargain theory has not been extended to the context of data privacy. Plaintiff contends she suffered injury in the form of the loss of benefit of her bargain because, when she accepted health care services from CMH, she was allegedly entitled to those services with "reasonable privacy and data security protections." FAC ¶ 142. But she does not allege the health care services she received were somehow defective. This overpayment theory has been rejected by courts nationwide, including by the Seventh Circuit in the context of Article III standing. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) ("Plaintiffs claim that the cost of their meals is an injury because they would not have dined at P.F. Chang's had they known of its poor data security. As we noted in *Remijas,* such arguments have been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect. . . . [W]e are not inclined to push this theory beyond its current scope."); *see also Carlsen v. GameStop,*

*Inc.*, 112 F. Supp. 3d 855, 861 (D. Minn. 2015), *aff'd on other grounds*, 833 F.3d 903 (8th Cir. 2016) ("Courts have generally found 'overpayment' theories insufficient to establish injury, even in situations involving highly sensitive PII."). This damages theory simply does not apply in the context of Plaintiff's claims.

Fourth, Plaintiff's general allegations that the incident may cause loss of privacy and emotional distress are also insufficient to support the damages element of her claims. As the Seventh Circuit recently explained, such emotional injuries constitute "quintessential abstract harms that are beyond" the Court's power to remedy. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021); *see also Kim v. McDonald's USA, LLC*, No. 21-CV-05287, 2022 WL 4482826, *6 (N.D. Ill. Sept. 27, 2022) ("Indeed, if these emotional injuries alone were sufficient to invoke the jurisdiction of federal courts, 'then everyone would have standing to litigate about everything.'") (quoting *Wadsworth*, 12 F.4th at 668). The Illinois Appellate Court has also repeatedly rejected claims that plaintiffs in data breach cases suffered emotional injury "given the speculative and conclusory nature of their allegations and the lack of imminent, certainly impending, or a substantial risk of harm." *See Flores*, 242 N.E.3d at 351; *Petta*, 230 N.E.3d at 168; *Maglio*, 40 N.E.3d at 870 ("We also reject plaintiffs' claims that they sufficiently alleged 'appreciable emotional injury' as a result of the burglary."). Plaintiff's unsupported allegations regarding "embarrassment, humiliation, frustration, and emotional distress," FAC ¶ 232, are no more concrete and particularized.

Finally, CMH's alleged use of Plaintiff's private information for advertising purposes is not a cognizable injury to Plaintiff. Plaintiff alleges that "inappropriate advertisements and the use of [her] Private Information for advertising purposes" is somehow an injury itself. FAC ¶ 231. But this is not a loss borne by Plaintiff. The Seventh Circuit has held that "a plaintiff's claim of injury

in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." *Silha*, 807 F.3d at 174-75 (holding that plaintiff's allegations that defendants profited from the sale of their personal information did not establish an injury in fact); *see also Dinerstein*, 73 F.4th at 518 (holding that plaintiff could not base an injury in fact on defendant's alleged unauthorized use of plaintiff's medical information for defendant's financial benefit). Thus, such allegations do not state a cognizable injury.

### 2. Plaintiff Fails to State a Claim for Negligence Per Se (Count II)

Count II of Plaintiff's Amended Complaint asserts a claim for negligence per se. FAC ¶¶ 235-46. As explained above, this claim is subject to dismissal for the same reason as Plaintiff's negligence claim, namely Plaintiff's failure to plead any loss compensable in tort. Plaintiff's negligence per se claims for the additional reason that Plaintiff does not identify any statute or regulation that imposes strict liability or sufficiently allege CMH violated such statute.

When a plaintiff alleges that a statute supplies a defendant's duty, courts must first inquire whether the Legislature intended to make the defendant liable in tort under that statute. *See Cuyler v. United States,* 362 F.3d 949, 952 (7th Cir. 2004). "Otherwise every statute that specified a standard of care would be automatically enforceable by tort suits for damages—every statute in effect would create an implied private right of action—which clearly is not the law." *Id.* To state a negligence per se claim, Illinois requires that the "statute provides for strict liability if violated." *See Test Drilling Serv. Co. v. Hanor Co.,* 322 F. Supp. 2d 957, 964 (C.D. Ill. 2003). "A violation of a statute only constitutes negligence *per se* (which would mean strict liability) if the legislature clearly intends for the act to impose strict liability." *Flores*, 242 N.E.3d at 355 (citing *Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999)) (affirming dismissal of separate negligence per se claim because the court found "no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations").

Plaintiff contends CMH had a duty under the FTC Act, HIPPA, and PIPA to maintain the security and privacy of Plaintiff's private information. FAC ¶ 237. But the Illinois Appellate Court has already soundly rejected the FTC Act as a basis for a negligence per se claim. *Flores*, 242 N.E.3d at 355. With respect to HIPAA and PIPA, Plaintiff does not sufficiently allege CMH violated either statute, but even if she had, there is no support for the notion that HIPAA or PIPA intended to impose strict liability for the conduct of which CMH is accused. Because HIPAA and PIPA, like the FTC Act, do not clearly provide for strict liability if violated, they also cannot be used as the basis for Plaintiff's negligence per se claim. *See M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336-NJR, 2025 WL 435992, at *6 (S.D. Ill. Feb. 7, 2025) ("Plaintiff's failure to identify HIPAA and HITECH as strict liability statutes is thus fatal to her claim of negligence per se.").

### 3. Plaintiff Fails to State a Claim for Invasion of Privacy (Count III)

Count III of Plaintiff's Amended Complaint asserts a claim for invasion of privacy based on intrusion upon seclusion. FAC ¶¶ 247-58. But "disclosures of private personal information 'do[ ] not support a claim for unauthorized intrusion.'" *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020). For this reason, Illinois courts have repeatedly held that Illinois does not recognize an invasion of privacy claim based on the alleged "deployment of third-party source code that causes the transmission of patient data." *Kurowski I*, 659 F. Supp. 3d at 943 (dismissing invasion of privacy claim for failure "to allege sufficient facts to support a claim for intrusion upon seclusion upon which relief can be granted"); *see also Genesis Health Sys.*, 2024 WL 3890164, *13 (holding that "disclosures to Facebook and the other entities did not amount to a disclosure to the public at large" and, thus, could not state a claim for intrusion upon seclusion); *Kurowski II*, 683 F. Supp. 3d at 849 ("Rush cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of."); *Hartley*, 2023 WL 7386060, *3 ("Since Plaintiff is complaining about what she thinks UCMC told Facebook,

her complaints are with the publication, and not any intrusion, which she probably initiated."). Plaintiff's allegations that CMH invaded her privacy by disclosing her "Private Information and confidential communications to Facebook and other third parties" are indistinguishable from the allegations these well-reasoned cases hold are insufficient to state an invasion of privacy claim. *See* FAC ¶¶ 250-51. Thus, Count III fails to state a cognizable claim.

#### 4. Plaintiff Fails to State a Claim for Breach of Implied Contract (Count IV)

Count IV of Plaintiff's Amended Complaint asserts a claim for breach of implied contract. FAC ¶¶ 259-69. But Plaintiff does not plausibly allege sufficient facts to show the existence of an implied contract for protection of her private information, let alone a breach of such a contract or damages. "[T]o prove an implied contract, [a plaintiff] must prove the same elements as an express contract": offer, acceptance, and consideration, albeit shown through conduct instead of words. *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007). In addition, Illinois emphasizes "that the plaintiff must show a mutual intent to contract, a meeting of the minds." *Id.* Plaintiff's implied contract claim fails for multiple independent reasons.

First, Plaintiff does not allege facts showing any kind of mutual assent or meeting of the minds as to agreed terms. *See La Salle Nat. Bank v. Int'l Ltd.*, 263 N.E.2d 506, 513 (Ill. App. Ct. 1970) ("If a binding contract is going to come into being—other than a contract implied in law or quasi-contract—it is essential that the parties to the agreement have a meeting of the minds, and that they truly assent to the same things in the same sense on all of its essential terms and conditions."); *see also BMO Harris Bank, N.A. v. Porter*, 106 N.E.3d 411, 421 (Ill. App. Ct. 2018) ("[T]he only difference between an express contract and an implied contract is that an implied contract is inferred from the facts and conduct of the parties, rather than from an oral or written agreement.").

Second, Plaintiff's breach of contract claim fails for lack of consideration. "Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999). Plaintiff alleges that CMH had a contractual obligation to protect Plaintiff's personal information and to notify Plaintiff if her data was compromised or stolen. FAC ¶ 261. Even when looking at facts in the light most favorable to Plaintiff, the only reasonable inference is that data security was not part of the "bargain" for health care services because there was no deal for data security. *See, e.g., Carlson*, 112 F. Supp. 3d at 862 ("Plaintiff's consideration was for enhanced content and he received the benefit of that bargain—the enhanced content. Therefore, security failures or misrepresentations relating to data security, even if true as alleged, cannot be a breach and thus cannot result in a breach-of-contract injury."). Moreover, the Amended Complaint lacks sufficient detail to support an inference that Plaintiff paid CMH for the requested health care services.

Finally, Plaintiff fails to allege she incurred "actual monetary damages." *Flores*, 242 N.E.3d a 356 (dismissing breach of implied contract claim because plaintiffs' "alleged injuries, while sufficient to establish standing, d[id] not amount to actual monetary damages"). Under Illinois law "[t]he proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *In re Illinois Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). A "claimant should not be placed in a better position, providing a windfall recovery." *Id.* Plaintiff does not allege that she paid money to CMH or experienced any actual out-of-pocket losses. Nor does Plaintiff allege that she did not receive the health care services that she sought from CMH. Accordingly, Plaintiff received the benefits for which she bargained and is not entitled to be "placed in a better position" than she would have been if the alleged breach had not occurred. *Id*; *see also Dinerstein*, 484 F. Supp. 3d

at 593 (dismissing breach of implied contract claim relating to alleged contract to keep plaintiff's medical information private because plaintiff's alleged damages were inadequate); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, ¶¶ 32-33 ("Plaintiffs cannot have it both ways: plaintiffs cannot seek to enforce the implied contract in order to recover actual damages due to [defendant]'s breach, and simultaneously seek a refund of the money they paid for data security that was not provided.").

**5. Plaintiff Fails to State a Claim for Unjust Enrichment (Count V)**

Count V of Plaintiff's Amended Complaint asserts a claim for unjust enrichment. FAC ¶¶ 270-77. But in Illinois, "unjust enrichment is not a separate cause of action but is a condition brought about by fraud or other unlawful conduct." *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 735 (7th Cir. 2021). In addition, Plaintiff fails to properly allege her unjust enrichment claim in the alternative and fails to sufficiently plead the elements of unjust enrichment. Count V should be dismissed for any of these independent reasons.

First, Plaintiff's unjust enrichment claim and ICFA both allege that CMH "collected, used, and disclosed" Plaintiff's private information for CMH's "own gain, for marketing purposes, and for sale or trade with third parties." FAC ¶¶ 272, 295. Because these claims are based on the same alleged improper conduct, Plaintiff's unjust enrichment claim must be dismissed with her ICFA claim. *See Aspen Dental*, 2024 WL 4119153, *9 (dismissing unjust enrichment claims because it was based on "the same improper conduct alleged in [plaintiffs'] ICFA claim"); *Genesis Health Sys.*, 2024 WL 3890164, *10 ("To the extent Plaintiff's unjust enrichment claim is tied to the implied contract claim or the ICFA claim which will also be dismissed, as discussed later, it must 'fall' with these claims."); *Loyola Univ. Med. Ctr.*, 2024 WL 3338941, *9 ("[P]laintiffs' unjust enrichment claim alleges that LUMC collected, used, and disclosed the plaintiffs' personal health data for its own financial gain under the guise that such information would be kept private. . . .

Because that is the same improper conduct alleged in their ICFA claim, the plaintiffs' unjust enrichment claim cannot stand.").

Second, Plaintiff's unjust enrichment claim is improperly pled in the alternative because it incorporates by reference the existence of a contract between the parties. FAC ¶ 270 (incorporating "the above allegations as if fully set forth herein," including all of Count IV alleging breach of implied contract); *see Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) ("[A] party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count."). Plaintiff's subsequent allegation that the "claim is pleading in the alternative to Plaintiff's breach of implied contract claim," FAC ¶ 207, does not correct this pleading error. *See Kurowski II*, 683 F. Supp. 3d at 852 (dismissing unjust enrichment claim "because Kurowski 'incorporated by reference allegations of the existence of a contract'").

Third, Plaintiff fails to sufficiently allege a benefit that CMH unjustly retained to Plaintiff's detriment. "To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Banco Panamericano, Inc. v. City of Peoria, Illinois*, 880 F.3d 329, 333 (7th Cir. 2018). Plaintiff alleges she "conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information." FAC ¶ 272. But the Illinois Appellate Court has rejected the argument that a plaintiff's personal information constitutes a benefit for the purposes of an unjust enrichment claim. *See Flores*, 242 N.E.3d at 357 ("[D]efendant incidentally received plaintiffs' personal information as an administrative necessity for providing their insurance services.").

Plaintiff further alleges she "would not have used Defendant's services, or would have paid less for those services, if [she] had known that Defendant would collect, use, and disclose" her

information. FAC ¶ 273. Plaintiff pleads no facts demonstrating that she, or anyone on her behalf, made any payment to CMH, and even if she did, she admits that she received the medical services that she sought. Plaintiff got no more or less protection of her information than the next patient—regardless of payment. Nor does Plaintiff claim that the medical services she received were somehow defective. Federal courts applying Illinois law have refused to entertain claims that a plaintiff would have paid less for a service or product unless "the product itself was defective or dangerous." *Lewert*, 819 F.3d at 968; *see also, e.g., In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) (applying Illinois law); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020).

#### 6. Plaintiff Fails to State a Claim for Breach of Implied Duty of Confidentiality (Count VI)

Count VI of the Amended Complaint asserts a purported breach of implied duty of confidentiality claim. FAC ¶¶ 278-88. But this is not a recognized cause of action in Illinois, and Plaintiff fails to allege any breach of the physician-patient relationship. Thus, Count VI fails.

Plaintiff alleges that "a duty of confidentiality [is] implied in every healthcare provider and patient relationship" and that she is entitled to damages for CMH's alleged breach of this duty by "deploying Pixels on [CMH's] Website and Online Platforms." FAC ¶¶ 281-88. Illinois courts have never recognized such a claim, however. *See Kurowski II*, 683 F. Supp. 3d at 845 ("As far as the Court is aware, a common law cause of action for breach of confidentiality remains unavailable in Illinois, and Kurowski has not offered any justification for the Court to 'breach new ground' here by recognizing one."). Thus, this Court should dismiss Count VI because federal courts sitting in diversity have "limited discretion . . . with respect to untested legal theories brought under the rubric of state law." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007); *see also, e.g., Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017) ("We

consistently have held that 'it is not our role to break new ground in state law.'"); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims.").

In considering whether the Illinois Supreme Court would recognize a breach of confidentiality claim based on a hospital's alleged disclosure of electronic health records, the Honorable Chief Judge Rebecca R. Pallmeyer concluded that "it is unlikely that Illinois would recognize the breach of confidentiality tort." *Dinerstein*, 484 F. Supp. 3d at 595. On appeal, the Seventh Circuit affirmed *Dinerstein* on other grounds but noted that there was "no reason to disturb the judge's decision not to recognize a novel claim for breach of medical confidentiality." *Dinerstein*, 73 F.4th at 516, n.4. Multiple courts have "adopt[ed] the same logic that both the Seventh Circuit and Judge Pallmeyer applied to this novel issue of state law" and dismissed plaintiffs' common law cause of action for breach of confidentiality. *Kurowski II*, 683 F. Supp. 3d at 845; *accord E. Side Health Dist.*, 2025 WL 435992, at *6.

Even if the Illinois Supreme Court were to recognize such a claim, the Amended Complaint does not sufficiently allege a breach of the physician-patient relationship. *See Genesis Health Sys.*, 2024 WL 3890164, *13 ("Plaintiff fails to support that any court in Illinois has found that a healthcare facility has a fiduciary duty in relation to patients' private information."). The statutory physician-patient privilege in Illinois prohibits a physician or surgeon from disclosing "any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802. CMH is a not-for-profit corporation and hospital system, not a physician or surgeon. Moreover, Plaintiff does not allege the disclosure of information acquired in attending Plaintiff. Instead, the Amended

Complaint alleges the disclosure of information Plaintiff voluntarily transmitted while seeking information on the Website, such as a physician she searched for and medical services she viewed. FAC ¶¶ 21, 90, 101, 107. This is not the type of information covered by the statutory physician-patient relationship. *See Kurowski I*, 659 F. Supp. 3d at 940-41 (agreeing with defendant's argument that even if a claim from breach of the implied duty of confidentiality exists in Illinois, "its scope is limited to disclosures that violate the statutory physician-patient privilege," and dismissing plaintiff's claim because she failed "to allege the disclosure of any information related to the provision of treatment to her").

## IV. CONCLUSION

For the foregoing reasons, Defendant Sarah D. Culbertson Memorial Hospital respectfully request that the Court dismiss the Amended Complaint, with prejudice.

### Oral Argument Requested

CMH requests oral argument and believes it may be helpful to the court due to the number of legal issues raised in the Amended Complaint and the evolving nature of the law governing claims regarding the alleged use of tracking technologies on a public website.

Dated: February 19, 2025

Respectfully submitted,

*s/ Maria A. Boelen*

Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, February 19, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*s/ Maria A. Boelen*