E-FILED
Wednesday, 19 March, 2025 05:31:06 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

ALANNA HANNANT, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

SARAH D. CULBERTSON MEMORIAL HOSPITAL,

Defendants.

Case No. 4:24-cv-04164-SLD

Honorable Judge Sara Darrow

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Defendant Sarah D. Culbertson Memorial Hospital ("Defendant" or "Culbertson") purposefully installed third-party trackers on its website. When patients like Plaintiff Alana Hannant ("Plaintiff") visited Culbertson's website, the trackers recorded patients' confidential health communications and private health information and then disclosed this information in combination with identifying information (such as IP addresses or identifying cookies) to third parties, like Facebook and Google, without these patients' consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's personal, private, confidential health information to third parties.

In the same context as this case, Illinois state courts, Illinois federal courts—*including no less than five separate Northern District of Illinois Courts*—the Seventh Circuit, and courts across the country all agree—claims like Plaintiff's are legally valid. *See, e.g.*, *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's judgment on the pleadings); *Stein, et al., v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ("*Elmhurst*") (in online tracking technology case, denying defendant's motion to dismiss); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University*

*Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* Exhibit A-1 (cases across the country finding same).

Defendant presents no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated her claims. Defendant failed to meet its heavy burden, and Plaintiff thus asks that this Court deny Defendant's motion to dismiss in its entirety.

## II. BACKGROUND

Defendant is a trusted hospital system in Rushville, Schuyler County, Illinois. Amended Class Action Complaint, ECF No. 14 ("Compl.") ¶¶ 38-41. Defendant encourages patients to use its Website to find medical providers, to find and research medical services, to access a patient portal, to pay bills, to search the website, including for personal medical information, and more. *Id.* ¶ 11.

Defendant maintains privacy policies on its Website (Compl., Exhibits B and C) (collectively, "Privacy Policies"). Therein, Defendant promises: "[i]n these cases we never share your information unless you give us written permission: • Marketing purposes • Sale of your information…." *Id.* ¶ 185. Despite these promises, and unbeknownst to patients like Plaintiff, Defendant installed trackers on its Website which collected and disclosed their Private Information, including Personally Identifying Information ("PII") and/or Protected Health

Information ("PHI") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook" or "Meta"), Google, LLC ("Google"), and potentially others ("the Disclosure"). *Id.* ¶ 1, 10. Defendant did this without patients' knowledge or authorization. *Id.*

Plaintiff Alana Hannant has been a patient of Defendant's for approximately two years. *Id.* ¶ 132. Plaintiff received healthcare services from Culbertson and physicians in Culbertson's network, including a biopsy and imaging. *Id*. Plaintiff used Defendant's Website to search for physicians, browse different services including MRIs, and used the patient portal multiple times. *Id.* ¶ 134. After using Defendant's Website, Plaintiff has been targeted by health-related online advertisements including ads for MRIs and has seen advertisements for doctors treating back problems on her Facebook feed. *Id.* ¶ 135. Through its use of trackers, Defendant disclosed to third parties like Facebook the Private Information that patients like Plaintiff submitted on Defendant's Website, including, *inter alia*: the pages and content she viewed, her status as a patient, seeking of medical treatment, health conditions and treatment she sought, location, information regarding her patient portal activity, specialties of the medical providers she searched for and viewed, the search results that she clicked on, the medical services she viewed, and her identity. *Id.* ¶¶ 140, 142.

As a direct and proximate result of Defendant's Disclosure, Plaintiff suffered myriad injuries, including: loss of privacy; unauthorized disclosure of and access to her Private Information by third parties; targeted health-related advertisements on Facebook and elsewhere reflecting her private medical treatment information; the difference between what Plaintiff paid for medical services (which included reasonable protections for their Private Information), and what she received, which, due to Defendant's Disclosures, did not include the privacy and security protections for which she paid; the portion of Defendant's revenues and profits attributable to collecting, serving and monetizing advertisements directed to Plaintiff's Private Information

without authorization and sharing it with third parties; value to Plaintiff of surrendering her choice to keep her Private Information private and allowing Culbertson to track her data; embarrassment, humiliation, frustration, and emotional distress; decreased value of Plaintiff's Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of her Private Information; and statutory damages. *Id.* ¶ 142.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'") (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

## IV. ARGUMENT

### A. Culbertson Violated the Electronic Communications Privacy Act

Plaintiff sufficiently alleged her claim under the Electronic Communications Privacy Act ("ECPA") by alleging Defendant intentionally employed third-party source code to intercept and disclose her Private Information to Facebook and other third parties without her consent. Compl.

¶¶ 88-92, 97, 99, 101, 103-104, 110, 115, 118, 126-127, 130, 194. Illinois district courts—including **five different Courts in the Northern District of Illinois**—have found these allegations sufficient to state an ECPA claim in this exact context. *See, e.g.*, *Elmhurst*, at *6; *Aspen Dental* at *2-3; *Kurowski IV*, at *2-3; *Hartley*, at *1-2. The Court should deny Defendant's motion to dismiss.

i. *The Crime Tort Exception Applies*

Culbertson first relies on the "one party consent" provisions of the ECPA. Def.'s Memo. ("Memo") at 4-5. However, the one-party consent provision is not available if the disclosure itself constitutes a tort or a criminal act (referred to herein as the "Crime Tort Exception"). 18 U.S.C. § 2511(2)(d). Citing decisions from the Fourth and Ninth circuits, Culbertson suggests that because it disclosed Plaintiff's "web browsing history" "for commercial gain," and not to violate HIPAA or to perpetuate torts, the Crime Tort Exception should not apply. Memo. at 5. For numerous reasons, Culbertson is wrong.

First, Plaintiff's does not allege that Culbertson disclosed her "web browsing history" – Plaintiff alleges that Culbertson disclosed her *protected health information*, including specific conditions, treatments, and physicians, along with her identity. Compl. ¶ 134, 140. Culbertson's attempt to recast Plaintiff's allegations to suit its purposes should be rejected. Second, Culbertson's argument that it is free to disclose its patients' Private Information so long as its motivation is to make money is legally unsound and against public policy. This argument has been soundly rejected by courts in the Seventh Circuit and by courts throughout the nation. This Court should follow those courts. As the *Elmhurst* court recently explained:

> The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive. After all, lots of crimes and torts are money-makers. Crime pays (until it doesn't), and lots of torts are good for the bottom line, too. The annals of history are chock-full of villains who have a

financial motivation — Madoff, Dr. Evil, and Al Capone, to name a few.

*Elmhurst*, at *6; *Kurowski IV*, at *5; ("[m]any crimes and torts are motivated by a desire to make money.") *R.C. v. Walgreen Co.*, 733 F. Supp.3d 876, 901 (C.D. Cal. 2024) ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-CV-01691-AA, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 n.4 (D. Minn. 2024) ("[I]t defies common sense that a clearly harmful act could escape liability as long as it was done for profit."). Defendant's argument that only "non-profit" crimes face liability under the ECPA, while "for-profit" crimes escape liability, is nonsensical.

Culbertson also asserts that Plaintiff's claim should be dismissed because she "must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself". Memo. at 6-7. According to Culbertson, the Crime Tort Exception can only apply if the plaintiff alleges the defendant intercepted communications with the *mens rea* of committing a crime or tort independent of (and simultaneous with) the interception. *Id*. This argument defies the language of the ECPA and has been disregarded by courts in the Seventh Circuit and by courts throughout the United States. For example, in dismissing this identical argument, the *Kurowski IV* court ruled that it "see[s] no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception." *Kurowski IV*, at *4. The court further held that the ECPA's "purpose" requirement applies to "'any criminal or tortious act in violation of the Constitution or laws of the United States or of any State,'" which "sweeps in both sophisticated offenses and straightforward ones," such as an unlawful disclosure of PHI under

HIPAA. *Id*. The court explained that because the plaintiff alleged that the defendant had the "ability to select which specific pages" would intercept and transmit patients' communications to Facebook and other third parties, and that "it actively chose to employ the tracking technology on certain pages of its website," a reasonable factfinder could infer the defendant "consciously desired" to intercept and transmit patients' protected health information. *Id*. *Elmhurst*, at *6 (holding, in the context of the Crime Tort Exception, that the "act must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.)

Here, as in *Kurowski IV,* Plaintiff alleges that Culbertson disclosed her Private Information to Facebook and other third parties in violation of HIPAA and the FTC Act. Compl. ¶¶ 134, 140, 151-169. Further, like *Kurowski IV*, Plaintiff pleads that Defendant "could have chosen not to use the Meta Pixel and other tracking technology such as Google Analytics, DoubleClick Ads, and Microsoft Clarity, or it could have configured its trackers to limit the information that it communicated to third parties, but it did not. Instead, it intentionally took advantage of these trackers' features and functions" that resulted in the disclosures of Plaintiff's Private Information. Compl. ¶ 125. The Court should follow the authority set forth in *Kurowski IV, Stien*, *Aspen, Loyola*, and *Hartley*, and reject Culbertson's attempt to shoehorn a *mens rea* requirement into the ECPA's Crime Tort Exception.

Additionally, citing *Kurowski IV* and *Hartley*, Culbertson argues that the Private Information it disclosed is somehow immune from Plaintiff's ECPA claim because Plaintiff failed to allege that the Private Information originated from "within [Culbertson's] patient portal (which is not publicly accessible)." Memo. at 7. First, Plaintiff *does* allege that "Culbertson shared information with Facebook about patients' portal activities." Compl. ¶¶ 118-124, 140. Second, no authority exists for the proposition that a healthcare provider only violates the ECPA when its

disclosures involve patient portal activity. Indeed, in *Kurowski IV*, the court held that the plaintiffs stated an ECPA claim by pleading that the defendant "programmed its *website* and its MyChart system to secretly deploy tracking technology" that disclosed "the name and location of a patient's personal physician, the physician's specialty, and the patient's conditions" that was used to "identify the patient and show them targeted advertising." *Kurowski IV*, at *1. Similarly, *Hartley* ruled the plaintiff's allegations that the defendant "disclosed that [the plaintiff] was seeking specific medical specialists," that "she was seeking information about sexually transmitted diseases," and that "Meta sold this information to entities that sent [the plaintiff] advertisements for medications that were relevant to specific conditions for which she was being treated" stated an ECPA claim. *Hartley*, at *2. This is precisely what Plaintiff here has alleged. Compl. ¶¶ 125, 134-135, 140.

*ii. Culbertson's Argument that the Data it Disclosed is not "Contents" Should be Rejected*

Finding no authority in the Seventh Circuit to support its claims, Culbertson directs the Court to various inapposite cases from other circuits to assert that "the disclosure of Internet metadata on a publicly accessible website is neither criminal nor tortious." Memo. at 6-9. There are two problems with Culbertson's reasoning. First, Culbertson's statement Plaintiff's Amended Complaint "only includes allegations regarding a hypothetical user's experience on the Website, as opposed to allegations specific to Plaintiff and her experience" is plainly false. Plaintiff alleges that Culbertson disclosed, *inter alia*, her seeking of medical treatments, specifically information related to an MRI test, her status as a patient, information regarding her patient portal activity, the specialties of the medical providers she searched for and viewed, the names of the medical providers she searched for and viewed, and her identity. Compl. ¶¶ 134, 140. This data is clearly *protected health information* linked to Plaintiff individually and Culbertson cannot argue in good

faith that it is not.

Second, courts around the country have rejected attempts by healthcare providers in analogous cases to assert that the data disclosed was mere "internet metadata" as Culbertson does here. For example, in *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *2 (W.D.N.Y. Mar. 19, 2024), the plaintiffs alleged that when they clicked a button on the defendant hospital's website to make an appointment with a specific physician, the website transmitted their Facebook ID, which informed Facebook that a particular person sought medical care from one of the defendant's providers in a specific specialty. In rejecting Culbertson's identical argument, the *Kane* court held:

> [The PHI the plaintiff alleged was transmitted] differs significantly from the information at issue in *Smith v. Facebook*, in which the court concluded that Facebook did not collect "protected health information" and was therefore not subject to HIPAA's strict disclosure requirements. . . Here, however, *because Defendant's website transmits data from which it is possible to identify a specific individual who is seeking treatment from a specific physician*, the information does relate to the provision of healthcare to an individual. 42 U.S.C. § 1320d(6). And, because Facebook can link this data to a specific user profile, there is a "reasonable basis to believe that the information can be used to identify that individual."

*Kane*, *6 (emphasis added); *Kurowski IV*, at *5 ("[I]n contrast to the plaintiffs in *Smith*, *Kurowski* alleges that Rush intercepted and transmitted specific information regarding her appointments, providers, health conditions, and care as a Rush patient. This type of individualized patient data is not general, publicly accessible health information); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. Dec. 22, 2022) ("This case is different than *Smith*. Unlike the "general health information that is accessible to the public at large" . . . the Pixel captures information that connects a particular user to a particular healthcare provider—i.e., patient status—which falls within the ambit of information protected under HIPAA."). As discussed *supra*, because Plaintiff alleges that her Private Information concerning specific conditions, specific

doctors, and her identity were disclosed to third parties without her consent (*see* Compl. ¶¶ 134, 140), Culbertson's argument should be dismissed.

Grasping at straws, Culbertson lastly advances a "rule of lenity" argument that should be rejected. The rule of lenity "applies only when a *criminal statute* contains '*grievous ambiguity*' or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *United States v. Ji Chaoqun*, 107 F.4th 715, 732 (7th Cir. 2024); *Ocasio v. United States*, 578 U.S. 282, 295 n.8, 136 S. Ct. 1423, 194 L. Ed. 2d 520 (2016). Because this case does not involve (1) a criminal statute or (2) a "grievous ambiguity," this argument is baseless. Even so, Culbertson, a healthcare provider, suggests that it has not been given "fair warning" that it could not share its patients protected health information with Facebook and recycles its false claim that the data it disclosed was mere "URL information." Memo. at 9. This is demonstrably false and willfully ignores Plaintiff's allegations. Plaintiff alleges that her protected health information and were identity were disclosed *in addition to* her URL. Compl. ¶¶ 34, 40. Plaintiff additionally alleges she at all times believed that her communications with Culbertson on its Website were private. *Id*. ¶¶ 13, 24, 138-139, 181. Furthermore, Plaintiff pleads that Culbertson maintains and is covered by a Notice of Privacy Practices which states it will never share its patients' information for marketing purposes without their written authorization. *Id*. ¶¶ 82, 85. Plaintiff finally alleges that Defendant is a healthcare provider covered under HIPAA. *Id*. ¶¶ 151-160. Culbertson is not entitled to dispute these allegations at the pleading stage under any rule on lenity. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) ("[w]e accept all facts in the complaint as true, view them in the light most favorable to the [plaintiff], and draw all reasonable inferences in [plaintiff's] favor.").

Culbertson has failed to meet its burden and its motion should be denied.

### B. Plaintiff Sufficiently Alleged an "Unauthorized Divulgence" by Electronic Communications Service and a Violation of the Stored Communications Act ("SCA")

Here, Plaintiff sufficiently alleged her ECPA claims by alleging Defendant intentionally employed third-party source code to intercept and disclose their Protected Information to third parties without their consent. Compl. ¶¶ 334-82. Illinois district courts—*including four different Courts in the Northern District of Illinois*—have found allegations are sufficient *in this exact context*. *See, e.g.*, *Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*. So too here, Plaintiff's ECPA claims are sufficient.

Defendant asserts Plaintiff's claim fails because it is not "an electronic communication service provider." But this argument rests on a misreading of the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e.*, made available, its website to the public. *See, e.g.*, Compl. ¶¶ 10-11. The majority of Illinois courts that have addressed ECPA claims in the hospital website privacy context have concluded that ECPA claims have merit in this context. *See, e.g., Loyola; Aspen Dental; Kurowski IV; Hartley*. And courts outside of Illinois have recently ruled against Defendant's position that only electronic communications services such as "internet service providers" qualify as an electronic communication service provider. For example, in *In Re BetterHelp, Inc. Data Disclosure* the defendant argued, as Defendant does here, that the plaintiffs' ECPA claim should fail because it was not "in the business of providing electronic communications services, in the manner of ordinary email and internet service providers." No. 23-CV-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*; *see also Amedisys*

*Holding, LLC v. Interim Healthcare of Atlanta, Inc.,* 793 F. Supp. 2d 1302, 1316 (N.D. Ga. 2011) (defendant "likely violated the SCA by intercepting her personal email account trade-secret material" without her consent).

Finally, Defendant argues Plaintiff's claims fail because it was the intended recipient of Plaintiff's communications. Defendant cites no legal authority to support this contention. As Plaintiff has already explained above, the crime-tort exception applies here, and that it was the intended recipient is of no moment. Furthermore, as one district court explained in just this context, where "Defendant knowingly used software on their website which forwarded private communications to third parties…then the party exception does not apply as Defendant would have shared these communications with entities who were not original parties to the conversation." *McCulley v. Banner Health*, 2024 U.S. Dist. LEXIS 85232, at *8 (D. Ariz. May 10, 2024) (explicitly rejecting defendant's argument that "because they were the intended recipient of all communications with the Plaintiffs, they could not have unlawfully intercepted these communications under the ECPA").

Defendant has again failed to meet its burden. Its motion must be denied.

### C. Plaintiff Stated a Claim under the Computer Fraud and Abuse Act

Culbertson contends that Plaintiff's Computer Fraud and Abuse Act claim ("CFAA") must be dismissed because Plaintiff did not sufficiently allege Defendant "reached into any 'off-limits areas' of her or other potential class members' computers—a required element of a CFAA claim." Memo. at 11-12. Not true. Plaintiff alleges that Defendant exceeded its authorized access to Plaintiff's protected computers when it surreptitiously implemented pixel trackers on its website to disclose Plaintiff's Private Information to third parties. Compl. ¶¶ 88-92, 97, 99, 101, 103-104, 110, 115, 118, 126-127, 130, 194. These allegations state a CFAA claim at the pleading stage. *In*

*re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 U.S. Dist. LEXIS 16947, at *11 (N.D. Cal. Oct. 9, 2001) (holding that allegation that defendants caused a cookie to be implanted in plaintiffs' computers stated a claim under the CFAA).

Next, Culbertson makes the argument that Plaintiff's CFAA claim must be dismissed because she fails to allege any "technological harms." Memo. at 12. However, Plaintiff alleges, *inter alia*, damages by way of the unauthorized disclosure of her Private Information and unauthorized access of her Private Information by third parties. Compl. ¶ 142. These damages clearly fall under an "impairment to the integrity or availability of data" under 18 U.S.C. § 1030(e)(8).

Culbertson's reliance on *Modis, Inc. v. Bardelli*, is misguided. Memo. at 12. There, the plaintiff alleged a single conclusory sentence regarding losses in excess of $5,000. 531 F. Supp. 2d 314, 320 (D. Conn. 2008) (noting Plaintiff's singular allegation that defendants conduct "caused loses to [plaintiff] in excess of $5,000" did not provide sufficient grounds to demonstrate relief above the speculative level). No such pleading deficiencies exist here, where Plaintiff pleads that Culbertson's secret transmission of her Private Information, which was never meant for public consumption, resulted in numerous losses which aggregate to least $5,000 in value, including but not limited to monetary damages, loss of privacy, unauthorized disclosure of Private Information, decreased value of Private Information, lost benefit of the bargain, and increased risk of future harm resulting from further unauthorized disclosure of their information. Compl. ¶¶ 142, 386. These allegations are sufficient at this time. *Fidlar Techs. v. LPS Real Estate Data Sols., Inc*., No. 4:13-cv-4021-SLD-JAG, 2013 U.S. Dist. LEXIS 159929, at *28-29 (C.D. Ill. Nov. 8, 2013) (finding allegations that defendant's access in authority resulted in a decrease in plaintiff's revenue

and that plaintiff suffered monetary damages in excess of $5,000, sufficient for a successful CFAA claim).

Because Defendant has once again failed to meet its burden, its motion to dismiss Plaintiff's CFAA claim should be denied.

### D. Plaintiff Sufficiently Alleged Defendant Violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

Plaintiff sufficiently stated a claim for breach of the ICFA by alleging Defendant deceptively encouraged its patients to use its website and online platforms, representing that information communicated therein was confidential, while simultaneously breaking that confidentiality by disclosing patient information. Compl. ¶¶ 11, 27-28, 136-141, 293-305. These claims are sufficient under Illinois law. *See Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 121 (2d Dist. 2006). Defendant's arguments otherwise ignore Illinois law and Plaintiff's allegations.

*i. Plaintiff sufficiently pleaded she is a consumer*

Under the ICFA, "[t]he term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household," and "[t]he term 'merchandise' includes any . . . services." 815 Ill. Comp. Stat. Ann. 505/1(e), (b). Here, Plaintiff alleged that she purchased medical services from Defendant for herself. *E.g.*, Compl. ¶¶ 132, 142 ("Plaintiff Alana Hannant has been a patient of Defendant for approximately two years. She received healthcare services from Culbertson and physicians in Culbertson's network . . . Plaintiff paid Culbertson for medical services . . ."). Plaintiff therefore sufficiently pleaded she is a consumer.

*ii. Plaintiff Sufficiently Pleaded a Deceptive or Unfair Act or Practice*

Plaintiff alleges that Defendant engaged in deceptive and unfair acts or practices including but not limited to (1) encouraging its patients to use its website while misrepresenting its commitment to protecting the privacy of patients' personal information (given that it was sharing that information with Facebook and possibly other third parties without patient knowledge or consent) and (2) falsely promising it would not use Plaintiff's PHI to send them marketing information without permission, all while knowingly gathering this PHI and using it for marketing purposes. Compl. ¶ 295.

Defendant first argues that Plaintiff has failed to adequately allege "how any statement [it] made is deceptive under Rule 9(b)." Memo. at 13. This simply ignores the allegations of the Amended Complaint, which detail exactly which statements were deceptive, and how they were deceptive. *See e.g.,* Compl. ¶¶ 85, 86, 87, 88, 295 ("Defendant encouraged its patients to use its Website and Online Platforms while representing its commitment to protecting the privacy of her Personal Information. Meanwhile, Defendant shared Plaintiff's and Class Members' Private Information with Facebook, Google, and Microsoft, and possibly others, without Plaintiff's and Class Members' knowledge or consent."). Defendant's argument is without merit.

Defendant next argues that Plaintiff "does not allege she was personally deceived." Memo. at 14. Again, this simply disregards the allegations she made. For example, the Amended Complaint alleges that "Plaintiff . . . relied on Defendant's representations in using Defendant's Online Platform and thought [she was] communicating only with her trusted healthcare provider. In actuality, Defendant was surreptitiously intercepting and transmitting Plaintiff's . . . communications from Plaintiff's . . . browsers directly to Facebook." Compl. ¶ 295(c). It also alleges that "Plaintiff provided her Private Information to Defendant and trusted that the

information would be safeguarded according to Culbertson's Privacy Policy and the law." *Id.* ¶ 139. Clearly, Plaintiff alleged she was personally deceived by Defendant's representations.

*iii. Defendant violated the Illinois Personal Information Protection Act and Plaintiff adequately alleged pecuniary loss*

Defendant next claims Plaintiff failed to allege actual monetary damages. Memo. at 14-15. In so arguing, Defendants ignore Plaintiff's allegations. Under the ICFA, actual damages include any economic loss, and Plaintiff has alleged suffering monetary damages and diminution of her Private Information. Compl. ¶¶ 231, 232, 244, 255, 268. Plaintiff further alleged that she paid for medical services and confidentiality of information, which she did not receive. Compl. ¶¶ 142, 261-266, 272-276. These allegations are sufficient at the pleadings stage. *See In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011) (finding allegations that plaintiffs lost money to be sufficient to allege an ICFA claim).

Defendant argues that because use of the Website is free, Plaintiff's lost benefit of the bargain, diminished value of personal information, and harm to privacy interests somehow do not count. Memo. at 15. Defendant cites no authority for this nonsensical argument, which should be rejected.

Defendant cites four non-binding cases (*Genesis*, *Loyola*, *Aspen Dental*, and *Kurowski II*) as authority against some of these theories of damages. Memo. at 15. But the aspects of those cases that Defendant leans on go against the decisions of nearly fifty courts across the country, which have allowed claims just like Plaintiff's here to proceed. *See* Exhibit A-9 (listing orders denying similar motions to dismiss consumer protection claims). Defendants failed to meet their burden on this claim as well, and their motion must be denied.

Defendant argues that the Seventh Circuit has "repeatedly rejected each of Plaintiff's damages theories." Memo. at 15-16. Defendant cites just two cases for this proposition: *Dinerstein*

*v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020), *aff'd as modified*, 73 F.4th 502 (7th Cir. 2023) and *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017). But both of these cases are highly distinguishable. As *Dinerstein* explains, the "context" of the case matters. 73 F.4th at 517. The context of *Dinerstein* involved a research partnership between Google and a hospital, wherein the hospital transferred de-identified medical records to Google, which the plaintiff affirmed his agreement to. *Dinerstein*, 73 F.4th at 502-03. The same is true of *Gubala*, which involved a cable television company that merely retained subscriber data and did not share it with any third parties. 846 F.3d at 910. In contrast, here, Plaintiff alleges that Defendant, her healthcare provider, has disclosed her Personally Identifying Information without her consent. *E.g.*, Compl. ¶¶ 132, 138-141.

Finally, Defendant argues that PIPA only applies to data breaches. Memo. at 15. Inexplicably, Defendant supports this claim with a citation to PIPA's definition of a "breach" as "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the data collector." Memo. at 16. But that is *precisely* what Plaintiff alleges. The *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 844 (N.D. Ill. 2024) case Defendant cites is completely inapplicable; that case involved LexisNexis, an online data platform, collecting and selling to law enforcement, corporations, and governments the personal information of consumers with whom it had no direct relationship. 729 F. Supp. 3d at 844.

Therefore, the Court should deny Defendant's Motion to Dismiss this claim.

**E. Plaintiff Sufficiently Alleged Violation of the Illinois Eavesdropping Statute ("IES")**

Plaintiff alleged Defendant intentionally employed third-party source code to intercept and disclose her Private Information to third parties without her consent—a tortious violation of Illinois

law as recognized by multiple Northern District of Illinois courts. *See Kurowski IV*; *Kurowski III*; *Loyola*; *Kurowski II*; *see also* Exhibit A-10 (orders allowing wiretap claims).

First, the Court need not consider Defendant's arguments, because their federal wiretap claim survives. Under federal law, states may not enact standards for electronic surveillance that are less stringent than those set by the Federal Wiretap Act. *See, e.g.*, *People v. Allard*, 2018 IL App (2d) 160927, ¶ 18 ("The trial court also restated the well-settled concept that…Congress preempted the regulatory field of electronic surveillance, and therefore Illinois may not enact standards that are less stringent than the requirements set by the federal statute."). As set forth below, Plaintiff's federal wiretap claim is sufficient. Because that claim survives, so too must Plaintiff's Illinois wiretap claim.

If the Court is inclined to consider Defendant's arguments, the claim is still sufficient. Defendant argues that Illinois limits its statute to "oral" communications. But the IES is not limited to literal "oral" communications. The IES explicitly states that the civil cause of action applies to "[a]ny or all parties to any conversation *or electronic communication*." 720 ILCS 5/14-6. And Illinois has implicitly recognized the applicability of the IES to electronic, written messages. *See, e.g.*, *People v. Gariano*, 366 Ill. App. 3d 379, 385 (1st Dist. 2006) (discussing the applicability of the IES to instant messages from a child predator, ultimately finding the messages at issue fell outside the statute based on intent); *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (considering the applicability of the IES to zoom chat messages, ultimately deciding based on intent).

Next, Defendant argues that it was a party to the communications. Defendant relies entirely on its own interpretation of the statute and provides the Court with no law to guide its analysis. Furthermore, Defendant entirely ignores most of the statute. It is a violation of the IES to eavesdrop

"for the purpose of transmitting or recording all or any part of any private *conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation*." 720 ILCS 5/14-2 (emphasis added). Indeed, the court in *Loyola* rejected Defendant's argument:

> [plaintiffs] allege violations based on use of an eavesdropping device 'for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party.' *That [defendant] is alleged to have been a party to the intercepted communications is, thus, not fatal to the plaintiffs' claim.*

*Id*. at *25-26 (emphasis added, internal citation omitted); *see also Aspen Dental*, at *4 (same). Defendant's argument is legally wrong, and its motion must be denied.

### F. Plaintiff Sufficiently Alleged Negligence

The Amended Complaint adequately states a claim for negligence. Under Illinois law, "[t]o state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of plaintiff's injuries." *Flores*, 2023 IL App (1st) 230140, ¶ 23 (citation omitted).[1]

Plaintiff pleaded Defendant's Disclosure breached its duties, under common law and under FTC and HIPAA, to exercise reasonable care in handling her Private Information, which caused him harm. *See* Compl. ¶¶ 226-231. These allegations are sufficient under Illinois law. *See Flores*, 2023 IL App (1st) 230140.

As the Northern District of Illinois recognized, in this exact context and allowing negligence claims, "Illinois law imposes a duty on data collectors to maintain reasonable security measures… It's not "you buy it, you break it," but it's in the same neighborhood. You collect it,

[1] Courts across the country have found the same. *See* Exhibit A-3 (listing orders denying similar motions to dismiss negligence claims).

you keep it safe." *Elmhurst*, 2025 WL 580556, at *9.

Defendants' Motion to Dismiss challenges only the injury element of negligence. Memo. at 5-9. However, as shown below, the Amended Complaint adequately alleges all required elements.

*i. Plaintiff suffered injury as a result of Defendants' Disclosure*

Plaintiff has alleged present injury and damages flowing from Defendant's unlawful disclosure of her (and the Class Members') Private Information sufficient to sustain her negligence claims, as recognized by Illinois law. These alleged injuries and damages include the unauthorized access of her and the Class Members' Private Information by third parties, the improper disclosure of their Private Information, lost benefit of their bargain, and lost value of their Private Information. *E.g.*, Compl. ¶¶ 142, 232, 245, 268, 332. These are concrete, recoverable damages.

The allegations of injury in the Amended Complaint are explicit and specific: "[a]s a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or imminently will suffer damages, including monetary damages, inappropriate advertisements and use of their Private Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 231. These allegations are more than sufficient to plead Defendants' misconduct caused compensable injuries.

As the District Court for the Northern District of Illinois recently explained in just this context in *Loyola*, the damages element is met where, as here, "plaintiffs allege that they have suffered 'fear, anxiety and worry' about the status of, and the loss of control over, their private health information." *Loyola*, 2024 WL 3338941, at *7 (citing *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 C 1836, 2024 WL 1556298, at *2 (N.D. Ill. Apr. 10, 2024)). Other Illinois District Courts, applying Illinois law, have likewise recently held alleged damages such as those

pled here are sufficient in the context of data privacy. *See, e.g.*, *Aspen Dental*, 2024 WL 4119153; *Hartley*, 2024 WL 1886909. Plaintiff here has alleged just such emotional harms, and her allegations sufficiently allege compensable injury under Illinois law. *E.g.*, Compl. ¶¶ 231-232 (alleging "embarrassment, humiliation, frustration, and emotional distress"), 244 (alleging "fear, anxiety, and worry about the status of their PII and PHI"). These allegations alone are sufficient. Defendant cites to *Flores* in arguing they are not, but that is unpersuasive in light of the greater weight of more recent district court cases finding this injury sufficient.

Likewise, in *Flores*, the Illinois Court of Appeals considered plaintiffs' allegations that, after a data breach, "they began to be targeted more frequently by spam messages and targeted marketing" and held that "[t]hese allegations of proximate cause and injury are sufficient at the pleading stage." 2023 IL App (1st) 230140, at ¶ 25. Plaintiff here alleges similar targeted marketing. For example, Plaintiff alleges that "[a]s a result of [Defendant's] Disclosure of Plaintiff's Private Information via the Meta Pixel and other tracking technologies to third parties without authorization. . . Plaintiff now receive[s] targeted health-related advertisements on Facebook, reflecting her private medical treatment information." Compl. ¶ 142. Here, as in *Flores*, these allegations are sufficient at the pleading stage. Defendant attempts to get around the holding of *Flores* by citing to inapposite cases: *Dinerstein* (discussed above), and *Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015). *Silha*, like *Dinerstein*, involved dissimilar facts (college entrance exam administrators, not healthcare providers) and did not involve targeted ads.

Defendant's citations to other cases provide no support for its arguments, because each of those cases is wholly inapplicable to this context. As the Southern District of Illinois explained a few weeks ago in a data breach case, *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021) is completely inapplicable here because in *Wadsworth*, "the plaintiff suffered no

harm other than the annoyance of a debt collectors attempts to claw back a bonus she had received from her employer," and "the plaintiff's whole claim was based on the debt collector's 'procedural violations' of federal law. *M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336-NJR, 2025 WL 435992, at *4 (S.D. Ill. Feb. 7, 2025). By contrast, the court explained, in a data breach action, "emotional distress, embarrassment, and fear of identity theft, which are non-economic damages . . . are recoverable in a negligence action under Illinois law." *Id.* (citing *Gallagher*, 631 F. Supp. 3d at 587 and *Volling v. Antioch Rescue Squad*, 999 F.Supp.2d 991, 999 (N.D. Ill. 2013)). The same logic applies to *Kim v. McDonald's USA, LLC*, No. 21-CV-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) as the import of that case for Defendant is its citation of *Wadsworth*.

Similarly, the allegations here are considerably different than in *Maglio v. Advoc. Health & Hosps. Corp.*, 2015 IL App (2d) 140782 and *Petta v. Christie Bus. Holding Co., P.C.*, 2023 IL App (5th) 220742, 230 N.E.3d 162, *aff'd sub nom. Petta v. Christie Bus. Holdings Co., P.C.*, 2025 IL 130337. In *Petta*, the appellate court reasoned that plaintiff failed to allege actual disclosure or misuse of her information, and the Supreme Court affirmed noting that the complaint did not allege that any of her "private, personally identifiable information" was used. *Petta*, 2023 IL App (5th) 220742, ¶ 15; *Petta v. Christie Bus. Holdings Co., P.C.*, 2025 IL 130337, ¶ 24. Likewise, *Maglio v. Advoc. Health & Hosps. Corp.*, 2015 IL App (2d) 140782, ¶ 26-27 ("plaintiffs here have not alleged that their personal information has actually been used . . . in the nearly two years since the burglary"). In sharp contrast, Plaintiff here clearly alleges Defendant's affirmative misuse of her private and personal information through actual disclosure to third parties, who in turn *also* misused Plaintiff's information by sending it to third parties for profit. These are not speculative or threatened injuries. These are not abstract future harms. These are real, concrete injuries.

Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's negligence claim.

**G. Plaintiff Sufficiently Alleged Negligence *Per Se***

First, Defendant argues that the negligence per se claim fails for failure to plead a compensable loss just as it argued for the negligence claim, but that argument is without merit for the reasons just explained.

Next, despite Defendant's argument to the contrary, Illinois recognizes "a common law duty to protect [plaintiff's] personal information" and a duty based in statute based on the FTC. *Flores*, 2023 IL App (1st) 230140, ¶22-28 (reasoning that "the legislature has now created a duty to maintain reasonable security measures under the Information Protection Act"); *see also Gallagher*, 631 F. Supp. 3d at 585–86 (finding defendant failed to meet its duty of implementing data privacy measures); *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 242–43 (1996) ("Although courts have held that there is no private cause of action under the FDCA, [plaintiff] has not brought suit directly under the FDCA or its accompanying regulations. [Plaintiff] relies on the FDA regulation merely to establish the standard or duty which defendant allegedly failed to meet. Nothing prohibits [plaintiff] from using the FDCA or its accompanying regulations in that fashion.") (citing *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716 (N.D. Ill. 1989)).

Defendant objects that the statutes must be strict liability statutes in order to state valid claims for negligence *per se*. Memo. at 22-23. But Plaintiff does not assert a standalone negligence *per se* claim, but one that runs alongside her negligence claim, using the FTC Act, HIPAA, HIPAA regulations, the Illinois Medical Patient Rights Act, and PIPA as evidence of Defendants' negligence—exactly what *Flores* reaffirmed was appropriate. 2023 IL App (1st) 230140, ¶ 28

("defendant's alleged violations of the FTC Act could be offered as prima facie evidence of defendant's negligence."); *see also M.C.*, 2025 WL 435992 at *6 (acknowledging that violations of statute including specifically HIPAA can be prima facie evidence of negligence even if the statutes are not strict liability statutes). Defendants further state that Plaintiff pleads insufficient facts to support that Defendant violated either HIPAA or PIPA. Memo. at 23. This is simply wrong; the Amended Complaint also contains specific HIPPA and PIPA allegations in paragraphs 151-160, 167-169, 177-180, 188-190, 237-246, 297-305. And the claim for negligence *per se* was based on the rest of the allegations in the Amended Complaint discussing exactly how Defendants collected Plaintiff's personal information and how it failed to implement and maintain reasonable security measures to protect that information from unauthorized access, use, and disclosure, in violation of all these statutes. Compl. ¶ 235. Defendant has failed to meet its burden, and its Motion to Dismiss must be denied.

**H. Plaintiff Sufficiently Alleged Culbertson Invaded Plaintiff's Privacy**

Plaintiff has sufficiently pleaded her intrusion upon seclusion claim by alleging that she had a reasonable expectation of privacy and Culbertson intruded on her solitude, seclusion, and private affairs by utilizing invisible pixel trackers to disclose her Private Information, including their protected health information, to unauthorized third parties, an act that is highly offensive to a reasonable person. Compl. ¶¶ 13, 24, 138-142, 181; *see Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 40 (holding that intrusion occurs when a plaintiff's private information is obtained by unauthorized third parties). Courts across the country have found common-law claims similar to Plaintiff's here have merit. *Salem Health*, 2024 U.S. Dist. LEXIS 155513 at *16 (finding Plaintiff had stated an intrusion upon seclusion claim under analogous circumstances, noting "Congress and courts have consistently noted that personal medical information is among the most sensitive

information that could be collected about a person, and the existence of many statutes like HIPAA and ORS § 192.553 regulating its disclosure supports this idea."); *Walgreen Co.*, 733 F. Supp. 3d at 895.

Defendant first asserts that Plaintiff fails to sufficiently allege intrusion, citing *Kurowski I*. However, *Kurowski I* is easily distinguishable from this case. The plaintiffs there failed to sufficiently allege that *the defendant*, and not third parties, carried out the interception of the plaintiffs' communication with Defendant. *Kurowski I*, 659 F. Supp. 3d at 943. No such pleading deficiencies exist here, where Plaintiff has extensively alleged that Defendant owns its website, maintains its website, and is responsible for what it embeds in the code of its website, including implementing pixel trackers enabling it to intercept Plaintiff's Private Information to increase its own profits. Compl. ¶¶ 69-71, 77, 80-81, 88-90, 91-92, 97, 99, 101, 103-104, 110, 115, 118, 126-127, 130, 194. Indeed, while the Meta Pixel is a creation of Facebook, Defendant is responsible for seeking out the Meta Pixel source code, configuring it, embedding it into its website, and facilitating the transfer of Plaintiff's Private Information to Facebook. *Id*. Finally, Plaintiff pleads that Culbertson could have chosen to configure any tracking tools on its Website that did not transmit its patients' Private Information to third parties, but it did not. *Id*. ¶ 125.

Based on Plaintiff's allegations, it is clear that she had an expectation of privacy and Defendant intruded upon her solitude, seclusion, and private affairs when it utilized invisible pixel trackers to disclose her Private Information to unauthorized third parties, an act that is highly offensive to a reasonable person. *See Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, *17 (denying defendant's motion to dismiss the plaintiff's intrusion upon seclusion claim where the plaintiff's "allegations amount to an argument that Defendant improperly surveilled her private devices and activities for data collection and marketing purposes.").

## I. Plaintiff Sufficiently Pleaded Breach of Implied Contract

Defendant next argues that Plaintiff's breach of implied contract claim fails for lack of mutual consent, lack of consideration, and lack of alleged damages. Memo at 24-25. These assertions plainly contradict the well-pleaded allegations in the Amended Complaint and should be rejected.

"To state a claim for breach of contract in Illinois, a plaintiff must plead: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Hernadez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023).

Plaintiff satisfies the first two elements by alleging she provided monetary compensation to Defendant in exchange for medical care, and that, as a condition of medical care, Defendant required its patients to provide their private, confidential, health information. Compl. ¶¶ 259-69. In return, Defendant provided its patients with promises or terms of the contract through its conduct, privacy policies, elsewhere—its implied, implicit, elevated duty as health care provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.*

When, in the course of conduct, health care providers require patients to provide confidential information, the implied promise is that health care providers will keep this *confidential* information *confidential*—in the same condition it received it. That is, "[y]ou collect it, you keep it safe." *Elmhurst*, at *9. Defendant failed to do this, and thus breached its contractual obligations.

Further, as already discussed above Plaintiff has sufficiently alleged damages. Plaintiff pleaded actual, economic damages. *See, e.g.,* Compl. ¶¶ 142, 268 (pleading monetary damages, lost benefit of the bargain, lost value of Private Information and diminution in value, lost use of

Private Information without compensation, lost time and money incurred to mitigate and remediate the effects of use of Private Information, and lost value to Plaintiff and Class Members of surrendering their choices to keep their Private Information private and allowing Defendant to track their data).

Plaintiff further alleged decreased value of her private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiff's Private Information, and increased risk of future harm. Compl. ¶¶ 142, 268; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include "loss of the economic value of purchases"). And Plaintiff's mitigation allegations are sufficient. *See Krupa*, at *2, n. 1 (defendant "would then have to go on to show that [plaintiff's] mitigation damages and the potential "imminent harm" of identity theft are likewise insufficient harms, which it cannot do."). Defendant does not even engage with these allegations. Thus, Defendant has failed to meet its burden and its motion must be denied.

### J. Plaintiff Sufficiently Pleaded Unjust Enrichment

Plaintiff sufficiently alleged unjust enrichment by alleging she conferred her PHI upon Defendant under the promise it would not disclose her PHI, Defendant then disclosed her PHI anyway, and it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiff's PHI under the premise of confidentiality. Compl. ¶¶ 271-277; *see Lozada*, at ¶ 37.[2] Defendant argues unjust enrichment is not a standalone claim. "Rather, it is condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence or, alternatively, it may be based on contracts which are implied in law." *Lozada*, ¶ 35 (citations omitted). Thus, Plaintiff's claim is properly pleaded, in combination with

[2] *See* Exhibit A-6 (listing orders allowing unjust enrichment claims).

Plaintiff's contract and Illinois state statutory claim. And again, claims in the alternative are allowed under the federal pleading standard at this stage.

**K. Plaintiff Sufficiently Alleged Defendant Breached the Duty of Confidentiality**

Disclosures which violate the statutory privilege between a patient and their healthcare provider define what is actionable under a contract theory. *Geisberger*, 72 Ill. App. 3d at 438. Three statutes set forth Defendant's duty to maintain the confidentiality of Plaintiff's sensitive Private Information: the Medical Patients' Rights Act, 410 ILCS 50/3 § 3(a)[3], § 735 ILCS 5/8-802 of the Illinois Code of Civil Procedure[4], and HIPAA.[5]

A plaintiff brings a cause of action under a breach of the implied duty of confidentiality theory when a healthcare provider discloses her "personal" information, *e.g.,* information relating to the patient's mental or physical condition or the physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438. Here, Plaintiff alleges that she received healthcare services from Defendant, Defendant agreed to keep her Private Information confidential, Defendant is bound by at least three statutes which establish the physician-patient privilege, and Defendant breached the implied duty of confidentiality to Plaintiff by intentionally deploying online tracking technology on its Website which transmitted Plaintiff's Private Information to Third Parties like Facebook. *E.g.*, Compl. ¶¶ 27, 28, 89-94, 129-132, 136-141. Therefore, Plaintiff has adequately pled a breach of

---

[3] (a) The right of each patient to care consistent with sound nursing and medical practices, to be informed of the name of the physician responsible for coordinating his or her care, to receive information concerning his or her condition and proposed treatment, to refuse any treatment to the extent permitted by law, and *to privacy and confidentiality of records except as otherwise provided by law*. (emphasis added).

[4] *No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character*, necessary to enable him or her professionally to serve the patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient . . . (emphasis added).

[5] 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501, 164.508(a)(3), 164.514(b)(2)(i) provides that a covered healthcare entity "*must obtain an authorization for any use or disclosure of protected health information for marketing*." (emphasis added).

the implied duty of confidentiality claim under Illinois law.

Citing a non-binding federal case, *Kurowski*, Defendants contend that Plaintiff's breach of fiduciary duty claim should be dismissed because "Illinois courts have never recognized a cause of action for breach of fiduciary duty against a physician." Memo. at 15. But that argument completely ignores *Geisberger*. *Geisberger*, 72 Ill. App. 3d at 438. Furthermore, the Northern District of Illinois has recognized Defendants' duty in just these circumstances:

> Illinois recognizes a common-law duty of care…on data collectors to maintain reasonable security measures… It's not "you buy it, you break it," but it's in the same neighborhood. **You collect it, you keep it safe.**…The complaint alleges that [defendant] collected [p]laintiffs' sensitive medical information, and then disseminated that information to a third party without their consent. **The collection of private health data is enough to give rise to a duty of care. A health provider that has private medical information in its hands must handle with care.**

*Elmhurst*, at *8 (citations omitted, emphasis added).

Furthermore, Plaintiff's allegations are not analogous to those in *Kurowski*. Here, Plaintiff alleges Defendant disclosed the following: her seeking of medical treatment, her searches for physicians, including the names and specialties of the physicians she searched for and viewed, her status as a patient of Defendant, information concerning her use of the patient portal, and her *identity* – to Facebook and other technology companies. *E.g.*, Compl. ¶¶ 140, 142. Plaintiff further alleges after she used Defendant's website, eerily personal advertisements for "MRI tests and advertisements for doctors treating back problems" began appearing in her Facebook feed. *Id.* ¶ 135. Such allegations clearly state information relating to Plaintiff's physical condition and her physician's diagnosis or treatment. *Geisberger*, 72 Ill. App. 3d at 438.

Defendant also cites to dicta in a federal opinion for the proposition that "it is unlikely that Illinois would recognize the breach of confidentiality tort." Memo. at 29 (quoting *Dinerstein*, 484 F. Supp. 3d 561). But as already mentioned, this dicta simply is not accurate; Illinois already recognizes this cause of action per *Geisberger*. And as explained above, *Dinerstein* is not

applicable here; that case involved drastically different allegations and information than that at issue here and did not even involve a healthcare provider.

Defendant closes by arguing that the Amended Complaint fails to sufficiently allege a breach of the physician-patient relationship, because (1) Culbertson is a hospital system and corporation, not a physician; (2) Plaintiff does not allege the disclosure of information "acquired in attending Plaintiff" but rather of "information Plaintiff voluntarily transmitted while seeking information on the Website." Memo. at 29-30. Again, this simply ignores the explanation of the Appellate Court of Illinois in *Geisberger*, which explained that "the action lies for the disclosure of 'personal' information, E. g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment," in breach of a contract. 72 Ill. App. 3d at 438. That is precisely what is alleged here: that Defendant, a healthcare provider that facilitates treatment for patients through its website, breached its contract with Plaintiff by disclosing her personal information relating to her physical condition and her physician's diagnosis or treatment. *E.g.*, Compl. ¶¶ 10-13, 24-31, 38, 42, 142, 260-269, 295.

Because Plaintiff's detailed allegations establish a plausible claim for relief, Defendant's motion should be denied.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated: March 19, 2025

Respectfully submitted,

*/s/ Lynn A. Toops*

Lynn A. Toops (No. 63337-43)
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

mschiller@cohenandmalad.com

J. Gerard Stranch, IV
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss
Raina Borrelli *(Pro Hac Vice forthcoming)*
STRAUSS BORRELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I certify that on March 19, 2025, I filed the foregoing *Response In Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system

*/s/ Lynn A. Toops*
Lynn A. Toops (No. 63337-43)