E-FILED
Thursday, 21 August, 2025 01:28:45 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| ALANA HANNANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SARAH D. CULBERTSON MEMORIAL HOSPITAL,<br><br>Defendant. | ) | Case No. 4:24-cv-04164-SLD |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff's Federal Statutory Claims Fail ..... 2

1. Plaintiff's Electronic Communications Privacy Act ("ECPA") Claim Fails ..... 2

2. Plaintiff's Unauthorized Divulgence by ECPA and Stored Communications Act ("SCA") Claims Fail ..... 4

3. Plaintiff's Computer Fraud and Abuse Act ("CFAA") Claim Fails ..... 5

B. Plaintiff's Illinois Statutory Claims Fail ..... 6

1. Plaintiff's Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claims Fails ..... 6

2. Plaintiff's Illinois Eavesdropping Statute ("IES") Claim Fails ..... 10

C. Plaintiff's Common Law Claims Fail ..... 12

1. Plaintiff's Does Not Allege Any Harms Compensable in a Negligence Action ..... 12

2. The FAC Does Not State a Separate Negligence Per Se Claim ..... 13

3. The FAC Does Not Allege Offensive Prying as Required to State an Invasion of Privacy Claim ..... 14

4. Plaintiff's Breach of Implied Contract Claim Fails ..... 15

5. Plaintiff's Unjust Enrichment Claim Fails ..... 16

6. Breach of Implied Duty of Confidentiality Is Not a Claim in Illinois ..... 17

III. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)................................10, 11, 12, 13

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................................................................2, 3

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)........................................................................13

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)..........................................................................................6

*Carlsen v. GameStop, Inc.*,
112 F. Supp. 3d 855 (D. Minn. 2015)..........................................................................6

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) .......................................................................................9

*Cochran v. Securitas Sec. Servs. USA, Inc.*,
93 N.E.3d 493 (Ill. 2017)............................................................................................13

*Corgan v. Muehling*,
574 N.E.2d 602 (Ill. 1991)......................................................................................12, 13

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009)..........................................................................................8

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) .......................................................................................15

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020)..................................................................14, 16, 17

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) ..................................................................7, 14, 15, 16

*Geisberger v. Willuhn*,
390 N.E.2d 945 (Ill. App. Ct. 1979) ......................................................................17, 18

*Gray v. Twitter, Inc.*,
No. 2:20-cv-01389 RAJ-BAT, 2021 WL 11086642 (W.D. Wash. Mar. 17, 2021). ...........................................................................................................3

*Gubala v. Time Warner Cable, Inc.*,
846 F.3d 909 (7th Cir. 2017) ........................................................................................16

*Hartley v. University of Chicago Medical Center*,
No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)............................................2, 13

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ..........................................................................................3

*Johnson v. Northshore Univ. Judge Presiding Healthsystem*,
No. 1-10-0399, 2011 WL 10069086 (Ill. App. Ct. Mar. 31, 2011) ......................................15

*Krupa v. TIC Int'l Corp.*,
No. 1:22-CV-01951-JRS-MG, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ..........................16

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .............................................................................2, 14

*Kurowski v. Rush System for Health*,
No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ...............................................2, 3

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ..........................................................................................6

*Lovgren v. Citizens First Nat. Bank of Princeton*,
534 N.E.2d 987 (Ill. 1989)...............................................................................................14

*M.C. v. E. Side Health Dist.*,
No. 3:24-CV-01336-NJR, 2025 WL 435992 (S.D. Ill. Feb. 7, 2025) ............................ *passim*

*Manley v. L.*,
889 F.3d 885 (7th Cir. 2018) ..........................................................................................13

*Mayer v. Midwest Physician Admin. Servs., LLC*,
No. 23-CV-3132, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025)........................................10, 11

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ...............................................................................8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................................................2

*Oliveira v. Amoco Oil Co.*,
201 776 N.E.2d 151 (Ill. 2002).........................................................................................8

*Petta v. Christie Bus. Holding Co., P.C.*,
230 N.E.3d 162 (Ill. App. Ct. 2023), *aff'd*, 2025 IL 130337 ..............................................7

*Pisciotta v. Old Nat. Bancorp*,
499 F.3d 629 (7th Cir. 2007) ....................13

*Rao v. JPMorgan Chase Bank, N.A.*,
No. 21 C 1361, 2022 WL 847560 (N.D. Ill. Mar. 22, 2022) ....................9

*Remijas v. Neiman Marcus Group, LLC*,
794 F.3d 688 (7th Cir. 2015) ....................6, 7

*Roper v. Rise Interactive Media & Analytics, LLC*,
No. 23 CV 1836, 2024 WL 1556298 (N.D. Ill. Apr. 10, 2024)....................12, 13

*Rosen v. Mystery Method, Inc.*,
No. 07 C 5727, 2008 WL 723331 (N.D. Ill. Mar. 14, 2008) ....................12

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
869 F.3d 568 (7th Cir. 2017) ....................18

*Schweihs v. Chase Home Fin., LLC*,
77 N.E.3d 50 (Ill. 2016) ....................13

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................7, 16

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ....................12, 13

*St. Johns Vein Center, Inc. v. StreamlineMD LLC*,
347 F. Supp. 3d 1047 (M.D. Fla. 2018)....................4, 5

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................15, 17

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ....................9

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991) ....................8

*United States v. Thompson/Center Arms Co.*,
504 U.S. 505 (1992)....................3

*Volling v. Antioch Rescue Squad*,
999 F.Supp.2d 991 (N.D. Ill. 2013) ....................13

**Statutes**

720 ILCS 5/14-1 ....................10

720 ILCS 5/14-2 .......................................................................................................... 10, 11

735 ILCS 5/8-802 .......................................................................................................... 17

815 ILCS 505/10a .......................................................................................................... 8

815 ILCS 530/20 .......................................................................................................... 9

18 U.S.C. § 2711(1) .......................................................................................................... 4

42 U.S.C. § 1320d(6) .......................................................................................................... 3

## I. INTRODUCTION

Plaintiff incorrectly concludes, without reference to well-pleaded facts, that the installation of web technologies on a publicly accessible website somehow caused PHI[1] to be sent to Facebook. While Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Amended Class Action Complaint (ECF No. 21, "the Response" or "Resp.") tries to explain away several deficiencies in the FAC that were raised in CMH's Motion, she still fails to state viable claims. Most fatal to her claims is her inability to plead allegations regarding specific data related to her, as opposed to a hypothetical user, that was disclosed by CMH to Facebook. Plaintiff argues in her Response that her claims are not merely hypothetical and that she did, in fact, allege that specific data related to her was taken. Resp. at 5, 8, 9. But her FAC shows differently. Plaintiff alleges that, *on information and belief*, CMH disclosed to Facebook the pages and content Plaintiff viewed, Plaintiff's seeking of medical treatment, Plaintiff's status as a patient, information regarding Plaintiff's patient portal activity, among five other generalized categories. FAC ¶ 140. In other words, Plaintiff guesses this happened.

Regardless, none of Plaintiff's well-pleaded allegations provide any details on what data, if any, she actually transmitted to CMH that was sent to third parties like Facebook. For example, the FAC contains no details on what specific type of information Plaintiff shared, when she shared it, and how that information allegedly was transmitted to any third party. The FAC also contains no allegations that the tracking technologies were embedded within the patient portal, which again makes any allegation that PHI was sent to Facebook based on nothing more than Plaintiff's guesswork. On a motion to dismiss, absent specific pleaded facts about Plaintiff's own circumstances, the Court need not credit her conclusory allegations based on speculation.

[1] CMH incorporates the same shorthand references as used in the Motion for this Reply.

# II. ARGUMENT

## A. Plaintiff's Federal Statutory Claims Fail

### 1. Plaintiff's Electronic Communications Privacy Act ("ECPA") Claim Fails

Plaintiff's claim under the ECPA "require[s] a showing that the defendant '(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094 (W.D. Wash. 2024). Contrary to Plaintiff's characterization, her allegations fall well short from those alleged in *Kurowski v. Rush System for Health*, No. 22 C 5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*"), and *Hartley v. University of Chicago Medical Center*, No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley II"*).[2] For example, in *Hartley II*, the plaintiff's claim for an ECPA violation in solely related to intercepted communications that allegedly occurred within the *patient portal*. (*Hartley II*, No. 1-22-cv-05891, Dkt. 61, ¶¶ 189(a)–(f).) Likewise, in *Kurowski IV*, the court found that the plaintiff had sufficiently "alleged that her *IIHI*[3] was transmitted," "including within the MyChart patient portal." 2024 WL 3455020, *4-5 (emphasis in original).

Absent such factual allegations, Plaintiffs instead relies on her presumed subjective intent when accessing CMH's publicly accessible website. But "information cannot become IIHI [i.e., PHI] based solely on the visitors' subjective motive for visiting the page." *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024). This is because "metadata shared with third-party vendors can only reveal sensitive PHI if an unknown subjective intent is communicated." *Id.*

[2] *Kurowski v. Rush Sys. for Health*, only addressed an alleged factual challenge at the motion to dismiss phase. 2023 WL 8544084, *2-3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*"). The court engaged in a more thorough analysis in *Kurowski IV*.

[3] For purposes of this reply, CMH uses the terms individually identifiable health information ("IIHI") and PHI interchangeably.

at 805. Accordingly, "without *knowing* a particular query relates to a category of information in Section 1320d(6), metadata from an [unauthenticated public website] search cannot constitute IIHI." *Id.* at 802 (emphasis in original). To find otherwise requires CMH to perform the impossible. *Id.*

Even if this Court concludes the crime-tort exception turns on CMH's "intended use" of the interception at the time it is intercepted, *Kurowski IV*, 2024 WL 3455020, *5, it is not plausible to infer, nor does the FAC allege any facts to support, that CMH intended to make unauthorized disclosures of Plaintiff's IIHI or the "contents" of her "communications." FAC ¶¶ 94-124 (alleging activities on CMH's public website). Although the *Kurowski IV* court identified that HIPAA "simply provides a knowing disclosure of IIHI," it failed to analyze whether the defendant could knowingly disclose IIHI of an individual user without knowing the subjective intent of the user. *Compare* 2024 WL 3455020, *4-5, *with Becerra*, 738 F. Supp. 3d at 802-04. This is because the "IIHI definition explicitly states the PHI in question must 'relate[] to' a listed category of information." *Becerra*, 738 F. Supp. 3d at 802 (citing 42 U.S.C. § 1320d(6)). Because users can visit websites for numerous reasons, there are no facts alleged, much less plausible facts, showing that CMH knowingly disclosed Plaintiff's IIHI when she visited CMH's public website.

Plaintiff's statement that the rule of lenity does not apply because this case does not involve a criminal statute is incorrect as a matter of law. *Compare* Resp. at 10, *with United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992) *and Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) ("Although this is a civil suit, the Wiretap Act also carries criminal penalties . . . ."). As a criminal statute, "the average person must be able to read the statute and understand what is, and what is not, prohibited." *Gray v. Twitter, Inc.*, No. 2:20-cv-01389 RAJ-BAT, 2021 WL 11086642, *9 (W.D. Wash. Mar. 17, 2021). It is not reasonable to conclude that an average

person can understand that internet metadata such as IP addresses, button clicks, and URL information amounts to "contents" of a communication and liability depends on an individual user's subjective intent when visiting a website that *may* reveal PHI. Therefore, to the extent "contents" of an online communication creates an ambiguity, the rule of lenity requires the Court to resolve the ambiguity in CMH's favor.

**2. Plaintiff's Unauthorized Divulgence by ECPA and Stored Communications Act ("SCA") Claims Fail**

Plaintiff also asserts claims for an unauthorized divulgence by electronic communications service and a violation of the SCA. Both the ECPA and the SCA require a defendant to be a provider of an "electronic communication service." 18 U.S.C. § 2711(1); *id.* at § 2702(a)(1); *id.* at § 2511(3)(a). The FAC relies on conclusory allegations that "[t]here is no question that Defendant 'provided,' *i.e.*, made available, its website to the public." Resp. at 11. But this is not the standard: simply providing a website to the public does not make a party a provider of an "electronic communication service." *See St. Johns Vein Center, Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1064 (M.D. Fla. 2018) ("majority of courts addressing [the statute's scope] interpret the ECPA . . . to encompass only traditional 'electronic communications service' such as internet service providers, electronic mail providers, telecommunications companies, and remote computing services.") (alternation in original) (quoting *IPC Sys. Inc. v. Garrigan*, No. 1:11-CV-3910-AT, 2012 WL 12872028, *9 (N.D. Ga. May 21, 2012) (citing cases)). Courts distinguish "those entities that sell access to the internet from those that sell goods and services on the internet or otherwise make use of internet services to conduct their day to day business activities." *St. Johns*, 347 F. Supp. 3d at 1064 (quoting *IPC Sys.*, 2012 WL 12872028, *9). CMH falls into the latter category and is therefore not an "electronic communications service." Plaintiff does not plausibly allege facts to show otherwise.

Plaintiff's reliance on *In re BetterHelp, Inc. Data Disclosure Cases* to allege CMH is an electronic service provider is also misplaced. No. 23-CV-01033-RS, 2024 WL 4504527, *2 (N.D. Cal. Oct. 15, 2024); Resp. at 11. BetterHelp is an online telehealth platform for therapy and counseling services. *Id.* The court determined that BetterHelp was an electronic service provider because it facilitated two-way electronic communications between its customers and third-party therapists. *Id.* Here, any such "two-way electronic communications," if any, occurred via CMH's patient portal. This is the exact distinction made in *St. Johns* and *IPC Systems*: an entity that sells an internet service can be an electronic service provider, whereas an entity that simply utilizes the internet to sells goods or services is not. Because CMH is not in the business of providing electronic communications services, *In re BetterHelp* is inapplicable.

### 3. Plaintiff's Computer Fraud and Abuse Act ("CFAA") Claim Fails

Plaintiff appears to abandon her theory of damages based on a threat to public health or safety and only addresses aggregate loss of at least $5,000 in value allegations. *See* Resp. at 12-14. Yet Plaintiff's reliance on *Fidlar Technologies. v. LPS Real Estate Data Solutions* is improper because there this Court found that allegations of damages in excess of $80,000 were sufficient because of an alleged interruption of service. No. 4:13-CV-4021-SLD-JAG, 2013 WL 5973938, *7-8 (C.D. Ill. Nov. 8, 2013). "Loss" is defined in the CFAA as "[a]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and *any revenue lost, cost incurred, or other consequential damages incurred because of the <u>interruption of service</u>*." *Id.* at *7-8. (emphases added). The FAC makes no such allegations of interruption of service, and Plaintiff fails to allege she suffered any economic damages, let alone the statutory threshold, as a result of an "invasion" into her computer when visiting a public website.

### B. Plaintiff's Illinois Statutory Claims Fail

#### 1. Plaintiff's Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claims Fails

##### a. Illinois Courts Routinely Reject Plaintiff's Damages Theories

As explained in the Motion, both the Seventh Circuit and the Illinois Appellate Court have repeatedly held that the ICFA requires a plaintiff to establish "actual pecuniary loss" to bring a private cause of action. Mem. at 14-15 (collecting cases); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 860 (Ill. 2005) (stating that damages that "are not, in fact, real or measurable damages . . . in no way constitute 'actual damage' within the meaning of the [ICFA]").

First, Plaintiff alleges "she paid for medical service and confidentiality of information, which she did not receive." Resp. at 16. Such allegations are commonly referred to as overpayment or benefit of the bargain damages and are routinely rejected as a viable damages theory when, as here, plaintiff does not complain that the product or service received was somehow defective. *See, Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016) ("Plaintiffs claim that the cost of their meals is an injury because they would not have dined at P.F. Chang's had they known of its poor data security. As we noted in *Remijas,* such arguments have been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect. . . . [W]e are not inclined to push this theory beyond its current scope."); *M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336-NJR, 2025 WL 435992, *4 (S.D. Ill. Feb. 7, 2025) ("Here, the product was the care Plaintiff received at East Side. Her complaint contains no allegations that it was substandard or ineffective. Thus, as in *Lewert*, this Court is 'not inclined to push th[e] [benefit of the bargain] theory beyond its current scope.'"); *see also Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861

(D. Minn. 2015) ("Courts have generally found 'overpayment' theories insufficient to establish injury, even in situations involving highly sensitive PII.").

Second, Plaintiff argues she suffered "diminution of her Private Information." Resp. at 16. In addition to the cases already cited in the Motion, numerous other Illinois federal and state courts have refused to recognize diminution in the value of personal information as a viable theory of damages. *See, e.g., Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 695 (7th Cir. 2015) ("This assumes that federal law recognizes such a property right. Plaintiffs refer us to no authority that would support such a finding. We thus refrain from supporting standing on such an abstract injury, particularly since the complaint does not suggest that the plaintiffs could sell their personal information for value."); *Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015) ("Plaintiffs have pled that Defendants profited from the sale of their PII, but they did not establish how this profiteering deprived them of the economic value of this information."); *E. Side Health Dist.*, 2025 WL 435992, *3 ("[T]he alleged diminution of the value of [plaintiff's] personal information cannot support her claims in this case."); *Flores v. Aon Corp.*, 242 N.E.3d 340, 357-58 (Ill. App. Ct. 2023) ("[W]e decline to hold that diminution in the value of personal information is a specific economic injury under the Consumer Fraud Act."); *Petta v. Christie Bus. Holding Co., P.C.*, 230 N.E.3d 162, 169 (Ill. App. Ct. 2023), *aff'd*, 2025 IL 130337 ("[E]ven if such a right did exist, we cannot determine any nonspeculative way to assess the diminution in value of the property right."). Significantly, the Response does not cite a single case to the contrary.

Moreover, the Response does not identify any other potential alleged "monetary damages," and the only authority cited in support of Plaintiff's argument cuts against her position. "Plaintiffs cannot rely on the increased risk of identity theft or the costs of credit monitoring services to satisfy the ICFA's injury requirement" because "individuals cannot create standing by voluntarily

incurring costs in response to a defendant's act." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 527 (N.D. Ill. 2011). The plaintiffs in *Michaels Stores* alleged "they suffered monetary losses from unauthorized bank account withdrawals and/or related bank fees charged to their accounts." *Id.* Plaintiff makes no such allegations in the FAC, and her alternative damages theories are foreclosed by the controlling authorities cited above. Thus, the FAC fails to allege any actual pecuniary loss as required to state a claim for violation of the ICFA.

Finally, Plaintiff inexplicably argues that courts in other states have allowed similar statutory claims to proceed under those states' consumer protection statutes. Resp. at 16 & Ex. A-9. Other state statutes are not relevant to whether Plaintiff sufficiently pleaded a violation of the ICFA, however. They are not even analogous. In fact, Plaintiff fails to specifically point to another state's statute and statutory text that is similar to 815 ILCS 505/10a(a). This Court therefore should decline Plaintiff's invitation to scour her skeletal list of out-of-state authorities for any similarities that might help her argument. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Under controlling caselaw, Plaintiff's purported damages theories are simply not viable to state a claim under the ICFA.

**b. Plaintiff Does Not Sufficiently Allege She Was Personally Deceived**

The Response argues that CMH made deceptive statements in its online privacy policy. Resp. at 15; *see also* FAC ¶¶ 82-88 (describing allegedly deceptive statements in CMH's Notices of Privacy Practices posted on CMH's website). But Plaintiff does not allege she ever viewed CMH's Notices of Privacy Practices. FAC ¶¶ 132-39. Thus, she fails to sufficiently allege any personal deception, which is required to state a ICFA claim. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009); *Oliveira v. Amoco Oil Co.*, 201 776 N.E.2d 151, 164 (Ill. 2002).

**c. The Illinois Personal Information Protection Act ("PIPA") Cannot Save Plaintiff's Defective ICFA Claim**

The Response's single paragraph addressing PIPA does not cite any supporting authority and fails to cogently explain how PIPA applies. Resp. at 17. This is insufficient to satisfy Plaintiff's burden. "In responding to a motion to dismiss, 'the non-moving party must proffer some legal basis to support his cause of action.'" *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018). "If a Rule 12 motion to dismiss is filed, plaintiffs must 'specifically characterize or identify the legal basis' of their claims or face dismissal . . . . This is especially true when a party advances a novel legal theory." *Id.* For this reason alone, Plaintiff's argument should be disregarded. *Id.* at 824-25 (affirming the dismissal of ICFA claim based on a violation of PIPA because "plaintiffs failed to explain to the district court whether and how [defendant's] conduct fell under one of the operative subsections of [PIPA] and not any of its exceptions").

Regardless, PIPA was never intended to reach the conduct of which Plaintiff complains. "PIPA's data security provision [ ] was intended to provide remedies for large-scale data breaches." *Rao v. JPMorgan Chase Bank, N.A.*, No. 21 C 1361, 2022 WL 847560, *8 (N.D. Ill. Mar. 22, 2022) (citing H.R. Tr. 99-88, Reg. Sess., (Ill. 2015) (statement of Rep. Williams)). Applying PIPA to the alleged disclosure of personal information to Facebook, Google, and Microsoft through website tracking technologies would stretch the statute beyond its intended reach. Plaintiff does not cite any authority permitting such an expansion of Illinois state law.

But even if the FAC sufficiently alleges CMH violated PIPA (which it denies), such alleged violation merely "constitutes an unlawful practice under the [ICFA]." 815 ILCS 530/20. "The only way to pursue a claim under PIPA is by satisfying ICFA's requirements because PIPA does not create a separate cause of action." *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (affirming the dismissal of plaintiff's PIPA and ICFA claim because plaintiff failed to adequately

plead actual damages under ICFA). As explained above, FAC does not sufficiently allege reliance or actual damages and, thus, does not state a claim for violation of the ICFA.

### 2. Plaintiff's Illinois Eavesdropping Statute ("IES") Claim Fails

The Response misconstrues CMH's arguments and fails to address the fatal deficiencies in Plaintiff's IES claim. Plaintiff incorrectly argues that because the ECPA claim should not be dismissed, the IES claim should not be dismissed. Resp. at 18. Even if the Court were inclined to let the ECPA claim survive, the premise of Plaintiff's argument is flawed. These are distinct statutes with different elements. Illustrating this point, the Northern District of Illinois recently dismissed IES claims while permitting plaintiffs' ECPA claims to survive. *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-CV-3132, 2025 WL 963779, *3 (N.D. Ill. Mar. 31, 2025); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, *4 (N.D. Ill. Sept. 9, 2024).

The Response also incorrectly claims that CMH argued the IES is limited to oral communications. Resp. at 18. But the Motion argues Plaintiff's claim *based on 720 ILCS 5/14-2(a)(2)* is barred because that section of the statute only applies to oral communications. Mem. at 17. Plaintiff's IES claim consists of two distinct parts. First, Plaintiff alleges violation of 720 ILCS 5/14-2(a)(2), which provides that a person or entity violates the IES when he or she knowingly and intentionally "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any *private conversation* to which he or she is a party unless he or she does so with the consent of all other parties to the *private conversation*." (emphasis added); *see* FAC ¶ 311.[4] Under 720 ILCS 5/14-1(d), however, "private conversation" is defined to mean "any *oral communication* between 2 or more persons." (emphasis added). Because

[4] Paragraph 311 of the FAC quotes the language of 720 ILCS 5/14-2(a)(2), although it cites to "720 Ill. Comp. Stat. 5/14-2(a), -4." CMH believes this to be a citation error and addresses Plaintiff's claimed violation of 720 ILCS 5/14-2(a)(2).

Plaintiff's allegations in this case do not involve any alleged oral communications, the purported violation of Section 14-2(a)(2), which must be read and construed in conjunction with Section 14-1(d), should be dismissed. *See Aspen Dental*, 2024 WL 4119153, *4 (dismissing IES claim in similar case because statute only applied to oral communications); *Mayer*, 2025 WL 963779, *4 (same).

Second, Plaintiff alleges a separate violation of 720 ILCS 5/14-2(a)(5), which provides that a person or entity violates the IES when he or she knowingly and intentionally "[u]ses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties." *See* FAC ¶ 312.[5] CMH explained that this claim is barred because there is a one-party consent rule. Mem. at 18. The *Mayer* court explained this one-party consent rule recently in dismissing a Section 14-2(a)(5) claim like the one raised here. To make such a claim, Plaintiff must "first allege a violation of Section 14-2(a)(1), (a)(2), (a)(3), or (a)(4)." *Mayer*, 2025 WL 963779, *4. As explained above, there is no violation of Section 14-2(a)(2). The FAC also does not allege violations of Sections (a)(1), (a)(3), or (a)(4), but even if it did, none apply. Section (a)(1) is limited to oral communications; (a)(4) extends liability to manufacturers and distributors of eavesdropping devices; and (a)(3) specifically states that it reaches only electronic communications to which the eavesdropper is not a party. As explained in *Mayer*, "[b]ecause [CMH] was party to the communications alleged to have been sent impermissibly to Meta, Plaintiffs have not pled a Section 14-2(a)(3) violation as is required to allege a Section 14-2(a)(5) claim." *Id.* Thus, neither Plaintiff's claim under Section 14-2(a)(2) or (a)(5) can survive.

[5] Plaintiff again cites to "720 Ill. Comp. Stat. 5/14-2(a), -4" for the quoted language, but the language quoted is from 720 ILCS 5/14-2(a)(5). Thus, CMH addresses a purported violation of 720 ILCS 5/14-2(a)(5).

### C. Plaintiff's Common Law Claims Fail[6]

#### 1. Plaintiff's Does Not Allege Any Harms Compensable in a Negligence Action

The Response argues that damages for emotional harms are recoverable in negligence actions under Illinois law. Resp. at 20-22. But Plaintiff does not rebut CMH's arguments that the diminished value of personal information, benefit of the bargain, and gain to CMH through use of Plaintiff's private information for advertising purposes are not viable damages theories. In doing so, Plaintiff waived any opposition to these arguments and abandoned any damages theories other than emotional distress. *See Rosen v. Mystery Method, Inc.*, No. 07 C 5727, 2008 WL 723331, *6 (N.D. Ill. Mar. 14, 2008) ("A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture."). Thus, to the extent the Court finds that the FAC states a negligence claim, such claims should be limited to seeking the recovery of emotional distress damages. *See E. Side Health Dist.*, 2025 WL 435992, *4 (holding that negligence-based claims for "emotional distress, embarrassment, and fear of identity theft" survived defendant's motion to dismiss while eliminating or limiting plaintiff's other categories of damages).

With respect to Plaintiff's claim for emotional harms, she relies on a handful of district court cases that followed another district court case that inadvertently broke new ground in state law. Resp. at 20-21. *Roper*, *Loyola*, *Aspen Dental*, and *East Side Health District* overlooked a longstanding principle of Illinois law.[7] "When a tortious injury causes physical harm,

[6] Plaintiff's citations to out-of-state authorities purportedly allowing common law claims should be disregarded because Plaintiff does not make any argument that those authorities discuss any other state laws that are consistent with Illinois law. *See* Resp. at Exs. A-3, A-4, A-5, A-6, A-7, and A-8.

[7] While *Roper* cites a 2013 case discussing when emotional distress damages are recoverable, there was confusion in the courts at that time that led to the misapplication of the Illinois Supreme Court case *Corgan v. Muehling*, 574 N.E.2d 602, 608-09 (Ill. 1991)). *See Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2024 WL 1556298, *2 (N.D. Ill. Apr. 10, 2024) (citing *Volling v. Antioch Rescue Squad*,

compensatory damages are available for harm to emotional well-being, but when a tortious act causes no physical harm, emotional damages are available only if the act was extreme or outrageous and undertaken with the knowledge and intent that the action would likely result in severe emotional harm." *Manley v. L.*, 889 F.3d 885, 892 (7th Cir. 2018). While Illinois court have recognized certain actionable wrongs that carry with them the right to recover damages for the resulting emotional distress even without any physical harm, Plaintiff cites no Illinois state court case holding that a pixel case constitutes such a wrong. *See Cochran v. Securitas Sec. Servs. USA, Inc.*, 93 N.E.3d 493, 502 (Ill. 2017) ("[T]ortious interference with the right to possess a corpse is analogous to wrongful birth, where the infliction of emotional distress is not *itself* the wrong that was committed but rather is part and parcel of the damage *that results from* the wrong that was committed."). Thus, this Court should take the narrower path and restrict liability. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635-36 (7th Cir. 2007) ("Without state authority to guide us, '[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the [state] Supreme Court tells us differently).'").

**2. The FAC Does Not State a Separate Negligence Per Se Claim**

The Response tacitly admits that Plaintiff's negligence per se claim is based on statutes that do not impose strict liability and argues that Plaintiff's negligence per se claim is not a

---

999 F.Supp.2d 991, 999 (N.D. Ill. 2013)). The Illinois Supreme Court has since clarified that "*Corgan* did not eliminate the need for a direct victim to allege and prove a contemporaneous physical injury or impact." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 61-62 (Ill. 2016) (affirming the dismissal of negligent infliction of emotional distress claim because "plaintiff did not include an allegation of a physical impact"). *Gallagher* cites back to *Volling*. *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022). *Loyola* simply cited *Roper*, and *East Side Health District* and *Aspen Dental* did not consider the issue. *See E. Side Health Dist.*, 2025 WL 435992, *4; *Aspen Dental*, 2024 WL 4119153, *9; *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, *7 (N.D. Ill. July 9, 2024). *Hartley II* does not discuss negligence claims or emotional distress damages. *See Hartley II*, 2024 WL 1886909.

standalone claim but "one that runs alongside her negligence claim." Resp. at 23-24. Plaintiff does not cite any Illinois authority permitting a separate negligence per cause of action to survive a motion to dismiss without identifying a statute or regulation that imposes strict liability. Thus, her claims for negligence and negligence per se are properly considered a single cause of action, and the Court should dismiss Count II, which is in line with the authorities Plaintiff cites. *See E. Side Health Dist.*, 2025 WL 435992, *6 ("Illinois law provides that 'the violation of a statute is not negligence per se, which refers to strict liability, but rather only prima facie evidence of negligence, unless the legislature clearly intends to impose strict liability.'"); *Flores*, 242 N.E.3d at 355 ("While defendant's alleged violations of the FTC Act could be offered as *prima facie* evidence of defendant's negligence, they do not constitute negligence *per se.* Therefore, we uphold the circuit court's dismissal of plaintiffs' separate negligence *per se* claim.").

**3. The FAC Does Not Allege Offensive Prying as Required to State an Invasion of Privacy Claim**

Plaintiff's attempt to distinguish the authorities dismissing invasion of privacy claims cited in the Motion is confusing and misunderstands the nature of intrusion upon seclusion in Illinois. Resp. at 24-25. The nature of the inclusion upon seclusion tort "depends upon some type of *highly offensive prying* into the physical boundaries or affairs of another person. The basis of the tort is *not* publication or publicity. Rather, the core of this tort is the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat. Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989) (emphasis added). For this reason, *Kurowski I* held that plaintiff failed to state such a claim because the allegedly disclosed communications were intended to reach the defendant. *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943-94 (N.D. Ill. 2023). A defendant's unauthorized disclosure of a plaintiff's voluntary communications with defendant is not an intrusion and cannot give rise to an intrusion upon seclusion claim in Illinois. *See, e.g., id.*; *Dinerstein v. Google, LLC*,

484 F. Supp. 3d 561, 594 (N.D. Ill. 2020); *Johnson v. Northshore Univ. Judge Presiding Healthsystem*, No. 1-10-0399, 2011 WL 10069086, *5 (Ill. App. Ct. Mar. 31, 2011) (affirming the dismissal of intrusion upon seclusion claim because defendant's request for plaintiff's medical records did not constitute "offensive prying"). CMH's maintenance of a website through which it receives Plaintiff's voluntary communications that are intended to reach CMH is not offensive prying. And the alleged transmission of Plaintiff's information to third parties is not the intrusion. Thus, the FAC fails to state a cognizable claim for intrusion upon seclusion under Illinois law.

**4. Plaintiff's Breach of Implied Contract Claim Fails**

As explained in the Motion, the FAC does not allege a meeting of the minds or separate consideration for data security. Mem at 24-25. The only authority Plaintiff cites in support of her implied contract theory discusses whether "Illinois law imposes a duty on data collectors to maintain reasonable security measures" in the context of a negligence claim. *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, *9 (N.D. Ill. Feb. 21, 2025). Resp. at 26. It is unclear what import Plaintiff believes such a duty has in the context of a contract action.

More importantly, Plaintiff fails to allege any injury compensable in a contract action. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) ("Money out of pocket is a standard understanding of actual damages in contract law"). "To successfully make a breach of implied contract claim, a plaintiff must allege actual monetary damages." *Flores*, 242 N.E.3d at 356. Even if a plaintiff's alleged injuries are "sufficient to establish standing," they do not necessarily "amount to actual monetary damages" cognizable in a breach of implied contract claim. *Id.* As explained above, Plaintiff's benefit of the bargain and diminution in value of her personal information theories are routinely rejected by Illinois courts. *See* Section II.B.1.a, *supra*.

Plaintiff's other damages theories fare no better. The Illinois Appellate Court has held that lost time and money incurred to mitigate effects of a data breach do not support a breach of implied

contract claim. *Flores*, 242 N.E.3d at 356 (holding that "lost time responding to a data breach" and "diminution in value of plaintiffs' personal information" do not amount "to actual monetary damages").[8] Plaintiff's allegations that she "lost use of Private Information without compensation" are nonsensical. *See Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017) (explaining that plaintiff "hasn't been deprived of anything" because he still has his personal information). As explained in the Motion, an increased risk of future harm "has been rejected as a cognizable injury by the Illinois state courts and the Seventh Circuit." *E. Side Health Dist.*, 2025 WL 435992, *3; Mem. at 19. Emotional harms, loss of privacy, and the alleged value to Plaintiff of her choices to keep her information private are not monetary losses. *See, e.g., Dinerstein*, 484 F. Supp. 3d at 590 ("Illinois does not recognize emotional distress damages for breaches of contract."). And alleged revenues, profits, and savings attributable to the sale of Plaintiff's information is not an injury to Plaintiff. *Silha*, 807 F.3d at 174-75 ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."). Thus, the FAC fails to state a cognizable contract claim.

#### 5. Plaintiff's Unjust Enrichment Claim Fails

The Response argues that Plaintiff's unjust enrichment claim is based on the same conduct as her implied contract claim and ICFA claim and plead in the alternative. Resp. at 27-28. But Plaintiff fails to address CMH's argument that the FAC improperly pleads unjust enrichment in the alternative because it incorporates the existence of a contract between the parties. Mem. at 27. Moreover, the Response fails to rebut CMH's argument that a plaintiff's personal information does not constitute a benefit for the purposes of an unjust enrichment claim under Illinois law or cite

[8] Plaintiff's citation to *Krupa* is inapplicable because it addresses whether such damages are sufficient to establish standing, not whether they constitute actual monetary damages. *Krupa v. TIC Int'l Corp.*, No. 1:22-CV-01951-JRS-MG, 2023 WL 143140, *2 & n.1 (S.D. Ind. Jan. 10, 2023).

any authorities in opposition thereto. Thus, Plaintiff's unjust enrichment claim should be dismissed for any of the independent reasons further explained in the Motion.

**6. Breach of Implied Duty of Confidentiality Is Not a Claim in Illinois**

Despite the Northern District of Illinois' well-reasoned determination in 2020 that "it is unlikely that Illinois would recognize the breach of confidentiality tort," *Dinerstein*, 484 F. Supp. 3d at 595, Plaintiff argues that a 1979 Illinois Appellate Court case recognized such a claim. Resp. at 29 (citing *Geisberger v. Willuhn*, 390 N.E.2d 945, 438 (Ill. App. Ct. 1979). But *Geisberger* never reached the question of whether Illinois recognized a cause of action for breach of confidentiality because the court held that plaintiff's complaint failed to state *any* cause of action against plaintiff's doctor. 390 N.E.2d at 436, 439 (affirming the dismissal of claims for breach of the physician-patient privilege, breach of implied contract, and invasion of privacy based on the disclosure of plaintiff's name to the police by an employee of the defendant doctor). Plaintiff's additional reliance on *Elmhurst* is misplaced given that the quoted portion discusses whether Illinois recognizes a common-law duty in the context of a negligence claim. 2025 WL 580556, *8-9.

As explained in *Geisberger*, "the common law does not recognize a privilege for communication between a doctor and a patient." 390 N.E.2d at 436-37. "Whether a patient's [information] is protected, therefore, depends entirely on the extent of the privilege granted under [statute]." *Id.* at 437. The applicable statute has since been codified at 735 ILCS 5/8-802. As explained in the Motion, Plaintiff does not allege that any information was disclosed in violation of the statute because CMH is not a physician or surgeon and did not obtain the allegedly disclosed information while attending to Plaintiff in a professional manner. Mem. at 28-29. Not only does *Geisberger* not support Plaintiff's argument, it directly contradicts it by following "the overwhelming majority of the courts of the United States which have held that the disclosure of

the name alone of the patient by a doctor or his agents does not violate the patient-doctor privilege." 390 N.E.2d at 438. Moreover, *Geisberger* holds that the physician-patient privilege is limited to communications that "must have been necessary for the performance of a professional duty on the part of the physician. That is, a duty to treat, prescribe or act for the patient." *Id.* at 437. Plaintiff's browsing history and searches do not meet these criteria.

Accepting Plaintiff's invitation to recognize Plaintiff's purported breach of implied duty of confidentiality claim would run afoul of the Seventh Circuit's directive that it is not the role of federal courts sitting in diversity "to break new ground in state law." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017). The Court should decline to do so.

## III. CONCLUSION

For the foregoing reasons, Defendant Sarah D. Culbertson Memorial Hospital respectfully request that the Court dismiss the Amended Complaint, with prejudice.

Dated: April 16, 2025

Respectfully submitted,

*s/ Maria A. Boelen*
Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Sarah D. Culbertson Memorial Hospital, certifies that this brief contains 6,025 words, excluding the cover page, table of contents, table of authorities, signature block, certificate of compliance, and certificate of service, which complies with the word limit of Local Rule 7.1(B).

Dated: April 16, 2025

*s/ Maria A. Boelen*
Maria A. Boelen

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, April 16, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*s/ Maria A. Boelen*
Maria A. Boelen