E-FILED
Monday, 17 November, 2025 01:26:33 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| ALANA HANNANT, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-04164-SLD |
| v. | ) | |
| SARAH D. CULBERTSON MEMORIAL HOSPITAL, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. PLAINTIFF'S ALLEGATIONS ........ 1

III. ARGUMENT ........ 2

A. Motion to Dismiss Standard of Law ........ 2

B. Plaintiff's Federal Statutory Claims Fail ........ 3

1. Plaintiff Fails to State a Claim for Violation of the ECPA (Count III) ...... 3

2. Plaintiff Fails to State a Claim for an Unauthorized Divulgence by Electronic Communications Service and a Violation of the SCA (Counts IV-V) ........ 11

C. Plaintiff's Negligence Claims Are Barred by the Tort Immunity Act (Counts I-II) ........ 13

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hospital Ass'n v. Becerra*,
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....4, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....3

*Bell v. City of Country Club Hills*,
841 F.3d 713 (7th Cir. 2016)....3

*In re BetterHelp, Inc.*,
No. 23-cv-01033-RS, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024)....12

*In re Chicago Flood Litig.*,
680 N.E.2d 265 (Ill. 1997), *holding modified in different part by Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 160 N.E.3d 895 (Ill. 2019)....14

*Desnick v. Am. Broadcasting Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995)....8

*DiMarco v. City of Chicago*,
662 N.E.2d 525 (Ill. App. Ct. 1996)....15

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025)....6, 7, 13

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....4

*Doe v. Lawrence Gen. Hosp.*,
No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025)....3, 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....9

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....4

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................................10

*Jarrett v. Upperline Health, Inc.*,
No. 1:23-CV-01261-RLY-CSW, 2025 WL 3067545 (S.D. Ind. Aug. 8, 2025)......................11

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) ....................................................................................10

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ..........................................................................4, 11

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ..........................................................................4, 7

*Liparota v. United States*,
471 U.S. 419 (1985)....................................................................................................10

*Moore v. Green*,
848 N.E.2d 1015 (Ill. 2006)........................................................................................13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)......................................................................8

*Okash v. Essentia Health*,
No. CV 23-482, 2025 WL 642913 (D. Minn. Feb. 27, 2025) ..............................................8

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)..........................................................................4

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ......................................................................................7, 8

*Rodriguez v. FastMed Urgent Care, P.C.*,
No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024)..........................................7

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024),
*reconsideration denied sub nom. Doe v. Amgen, Inc.,* No. 2:23-CV-07448-
MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024)....................................................4, 8

*Sappington v. Sparta Mun. Hosp. Dist.*,
245 N.E.2d 262 (Ill. App. Ct. 1969) ............................................................................14

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) ..........................6

*Smith v. Ne. Illinois Reg'l Commuter R.R. Corp.*,
569 N.E.2d 41 (Ill. App. Ct. 1991) ....................14

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................3

*United States v. Caira*,
833 F.3d 803 (7th Cir. 2016) ....................10

*United States v. Mitrovich*,
95 F.4th 1064 (7th Cir. 2024) ....................10

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ....................3, 6, 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................9, 10

**Statutes**

70 ILCS 910/22 ....................14

745 ILCS 10/1-101 ....................1, 14

745 ILCS 10/1-206 ....................14

745 ILCS 10/2-109 ....................14

745 ILCS 10/2-201 ....................14

745 ILCS 10/2-204 ....................15

18 U.S.C. § 2510(8) ....................9

18 U.S.C. § 2511 .................... *passim*

18 U.S.C. § 2702, *et seq.* ....................1, 11, 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................13

## I. INTRODUCTION

Sarah D. Culbertson Memorial Hospital ("Defendant") moved to dismiss Plaintiff Alana Hannant's ("Plaintiff") Amended Class Action Complaint (ECF No. 14, "First Amended Complaint") because it failed to allege facts sufficient to plausibly satisfy the elements of each of her twelve asserted claims. (ECF Nos. 16, 18, 23.) The Court dismissed all claims except for negligence and negligence *per se*. (ECF No. 24, "Order".) In response, Plaintiff filed her Second Amended Class Action Complaint (ECF No. 27, "Second Amended Complaint" or "SAC"), but not to correct deficiencies outlined in the Court's Order. Plaintiff abandons seven of her former claims, and rightfully so, but seeks to bring three claims the Court dismissed back into the case: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; (2) violation of the ECPA, 18 U.S.C. § 2511(3)(a), for unauthorized divulgence by electronic communications service; and (3) violation of Title II of the ECPA or Stored Communications Act ("SCA"), 18 U.S.C. § 2702, *et seq.*

For the reasons set forth more fully below, Plaintiff's Second Amended Complaint should be dismissed because Plaintiff continues to rely on hypothetical experiences of hypothetical users of Defendant's website. Because she has not addressed the deficiencies outlined in the Court's Order, her pleading should be dismissed, with prejudice. Further, Plaintiff's negligence claims should be dismissed because the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101, *et seq.* bars these claims.

## II. PLAINTIFF'S ALLEGATIONS[1]

This case is one of many across the country that alleges privacy violations based on a healthcare providers' publicly accessible website. Defendant is a non-profit corporation that

[1] For purposes of this Motion only, Defendant accepts as true the factual allegations in Plaintiff's Second Amended Complaint.

allegedly does business as a hospital system in Rushville, Schuyler County, Illinois. (SAC ¶¶ 34, 38.) Defendant allegedly maintains a public website at https://cmhospital.com/ (the "Website"). (*Id.* ¶ 10.) Through the Website, users, including patients and non-patients alike, are able to learn about the hospital system, find medical providers and services, access a patient portal, pay bills, and search for treatment information. (*Id.* ¶ 11.)

Plaintiff's specific allegations regarding her relationship with Defendant and use of the Website are essentially unchanged from her First Amended Complaint.[2] She recycles the same allegations to support her theory that users' activities on the Website were transmitted to third parties, like Facebook, and in turn transmitted sensitive medical information without consent. Plaintiff adds two sentences to her specific allegations: (1) Defendant transmitted information "including the name and location of her personal physician, the medical treatment she researched including information related to an MRI test, her treatment search information, her research on obtaining medical records, and her log in and use of the patient portal"; and (2) "information Defendant transmitted to third parties like Google and Facebook was used to target her with particular advertising associated with her particular health conditions." (SAC ¶¶ 134-35.) These conclusory allegations are unsupported and again "vague generalities" that the Court cautioned were insufficient. (Order at 9.) Simply put, Plaintiff made little attempt to address the deficiencies identified by the Court and relies on the same conclusory and vague allegations the Court already rejected. (*Compare* ECF No. 14 ¶¶ 132-34, 140-42 *with* SAC ¶¶ 132-34, 140-42; *see also* Ex. 1.)

## III. ARGUMENT

### A. Motion to Dismiss Standard of Law

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

[2] Attached as Exhibit 1 is a redline comparing the Second Amended Complaint against the First Amended Complaint for reference.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The motion should be granted if the allegations in the complaint, even when accepted as true and viewed in the light most favorable to the plaintiff, "could not raise a claim of entitlement to relief." *Id.* at 558. While Plaintiff is not required to provide "detailed factual allegations," the complaint must not merely state "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell v. City of Country Club Hills*, 841 F.3d 713, 716-17 (7th Cir. 2016).

### B. Plaintiff's Federal Statutory Claims Fail

#### 1. Plaintiff Fails to State a Claim for Violation of the ECPA (Count III)

Plaintiff alleges Defendant violated the ECPA, 18 U.S.C. § 2511(1)(a), (c), (d), through an unauthorized interception, use, and disclosure of her "Private Information." (SAC ¶¶ 249, 255-59.) Each of Plaintiff's theories require a showing that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025). The Court previously dismissed this nearly identical claim because Plaintiff failed to allege anything beyond legal conclusions regarding Plaintiff's use of the Website. (Order at 6-10.) The Second Amended Complaint does not cure any of the deficiencies outlined in the Order. (*Compare* Dkt. 14 ¶¶ 134-135 *with* SAC ¶¶ 134-135.). This Court should again dismiss Plaintiff's claim, like several other courts have in similar circumstances. *See Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, *3-5 (D. Ariz. Sept. 30, 2024); *Doe v. Lawrence Gen. Hosp.*, No. 25-CV-10081-NMG, 2025 WL 2808055, at *8-18 (D. Mass. Aug. 29, 2025), *report and recommendation*

*adopted in part, rejected in part,* No. CV 25-10081-NMG, 2025 WL 2807673 (D. Mass. Sept. 30, 2025); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024), *on reconsideration in part,* No. EDCV 23-2092 JGB (DTBX), 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 936-38 (N.D. Ill. 2023) ("*Kurowski I*"); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 842-44 (N.D. Ill. 2023) ("*Kurowski II*"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *8-10 (N.D. Cal. Apr. 11, 2024); *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.,* No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024).

**a. Plaintiff Fails to Allege Any Unlawful Interception**

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d) (The ECPA does not make it unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication"). Defendant was allegedly a party to (and intended recipient of) the alleged communications on the Website. (*See* SAC ¶¶ 12, 70.) "Because Defendant was the party that was meant to, and did, receive Plaintiffs' communications on the [Public] Website, under the party exception, 'any alleged interception of the communication is not actionable.'" *Eisenhower*, 721 F. Supp. 3d at 1065 (quoting *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023)); *see also Kurowski I*, 659 F. Supp. 3d at 938; *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, *1 (N.D. Ill. Nov. 8, 2023).

**b. The Crime-Tort Exception Does Not Apply**

Plaintiff does not seriously dispute that Defendant was a party to the alleged electronic communication. Instead, she attempts to evade the party exception by alleging that Defendant acted with a criminal or tortious purpose (advertising and violating Health Insurance Portability

and Accountability Act ("HIPAA")). (SAC ¶ 265.) Previously, the Court held that "Plaintiff's allegations of her own experience, as opposed to a potential class member, lack the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation." (Order at 9.) The Court distinguished cases where plaintiffs "succeeded in invoking the crime-tort exception via HIPAA violations by plausibly alleging that their patient status was captured in interceptions or disclosures showing that they had clicked 'the "Schedule an Appointment" button'", or similar circumstances. (Order at 8 (citations omitted).) The Court noted however that "courts have found that even transmissions showing navigation to a page containing methods for scheduling an appointment or logging into a hospital's patient portal are insufficient without further information demonstrating that the individual availed herself of those methods." (Order at 9 (citations omitted).)

The Second Amended Complaint contains minimal revisions to Plaintiff's specific allegations, none of which are sufficient to invoke the crime-tort exception:

> 134. Plaintiff Hannant used the Website and Online Platforms to: find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more. Defendant transmitted this information, including the name and location of her personal physician, the medical treatment she researched including information related to an MRI test, her treatment search information, her research on obtaining medical records, and her log in and use of the patient portal, to third parties like Google and Facebook.
>
> 135. After Plaintiff Hannant used the Online Platforms, advertisements for MRI tests and advertisements for doctors treating back problems began appearing in her Facebook feed. The information Defendant transmitted to third parties like Google and Facebook was used to target her with particular advertising associated with her particular health conditions.

(Ex. 1 at 46-47.) These bare revisions still do not provide plausible allegations that Plaintiff herself (as opposed to a hypothetical class member) "actually contacted any specific physician, that she actually obtained any of her medical records, nor even that she logged into the patient portal." (Order at 9.) Further, "an allegation that patient status was disclosed, standing alone, is closer to a legal conclusion than a factual allegation." (Order at 10.) In sum, like with the First Amended Complaint, the "necessary specificity about Plaintiff's use of the Online Platforms is simply not part" of the Second Amended Complaint. (Order at 10).

Setting aside the conclusory nature of Plaintiff's allegations, the disclosure of Internet metadata on a publicly available website is not actionable. *See Am. Hospital Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, *13 (N.D. Tex. June 20, 2024) ("information cannot become [PHI] based solely on the visitors' subjective motive for visiting the page"); *id.* at *14 ("Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 9555 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) ("nothing about [Internet metadata] information relates specifically to Plaintiff's health' and that the information is "general health information that is accessible to the public at large"); *see also TMC Health*, 2024 WL 4364150, *4 (visiting a public website "does not *necessarily* implicate HIPAA") (emphasis in original).

Further, the alleged criminal or tortious actions are not separate and independent from the alleged interception, disclosure, or intended use, and the desire to make money is not sufficient under the crime-tort exception.[3] *TMC Health*, 2024 WL 4364150, *4; *Doe 1 v. Chestnut Health Sys., Inc.,* No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) ("A recitation of the elements that the Defendant's purpose was tortious or criminal, without alleging

[3] Notably, Plaintiff's allegations that Defendant acted with the purpose of "increas[ing] its profit margins" are belied by her acknowledgment that Defendant "is a non-profit corporation." (SAC ¶¶ 34, 261.)

any facts—independent of the interception itself—that it was done for a criminal or tortious purpose, will not do."). Courts apply the crime-tort exception only "where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski II*, 683 F. Supp. 3d at 844; *see also Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 136 (9th Cir. 2022) (stating the "criminal or tortious purpose must be separate and independent from the act of recording."). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Planned Parenthood*, 51 F.4th at 1136 (emphasis in original).

Here, the alleged "purpose" of Defendant's conduct for commercial gain is not a separate or independent purpose under the crime-tort exception. (*Compare* SAC ¶¶ 20, 29, 44 *with Chestnut Health Sys.*, Inc., 2025 WL 1616635, at *12 ("Plaintiffs also allege, contradictorily, that the Defendant shared the information with third parties 'for the purpose of creating targeted online advertisements and enhanced marketing services,' not tortious or criminal conduct.").) Even viewing the allegations in the light most favorable to Plaintiff, her allegations show that the intended use (as well as interception and disclosure) of the tracking technology was "for commercial gain," not to violate HIPAA, violate the Federal Trade Commission Act ("FTC Act"), or commit an invasion of privacy tort. (*Compare* SAC ¶¶ 20, 29, 44 *with Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582, *6 (E.D.N.C. July 24, 2024) ("merely alleging that [Defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain . . . does not equate to [Defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act.'") (quoting 18 U.S.C. § 2511(2)(d)).) Stated differently, "all the facts Plaintiffs alleged regarding Defendant's purpose in intercepting the communication point to one conclusion—a non-criminal, non-tortious purpose."

*TMC Health*, 2024 WL 4364150, *4; *see, e.g., Amgen*, 2024 WL 2873482, *6 ("the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally."); *see also Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13-14 ("[T]he interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation. There is no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools."); *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2025 WL 642913, at *3-4 (D. Minn. Feb. 27, 2025) (finding no crime or tort independent of the initial interception of data).

Nor can Plaintiff bifurcate the same action to create a separate, independent criminal or tortious purpose. Plaintiff recycles the same criminal or tortious purpose—violating HIPAA and the FTC Act—as both the purpose of her ECPA claim as well as the purpose for the interception, disclosure, and intended use. (SAC ¶¶ 16, 256-57, 265.) Courts have rejected this tactic when analyzing virtually identical claims. *See Eisenhower*, 721 F. Supp. 3d at 1065 ("a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself") (emphasis in original). Because the criminal or tortious act of violating HIPAA is not "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits," Plaintiff fails "to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1096 (W.D. Wash. 2024); *Planned Parenthood*, 51 F.4th at 1136; *see also Desnick v. Am. Broadcasting Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (finding no criminal purpose in a recording when the defendant did not record plaintiff *for the purpose* of committing a crime or tort).

### c. Plaintiff Does Not Adequately Allege Intercepted Contents

Plaintiff also fails to allege sufficient facts to plausibly show that the "contents" of any communications were disclosed to a third party. Under the ECPA, "contents" is defined as "any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(8). Courts distinguish between "content" and "record" information. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (concluding "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer). The Ninth Circuit has explained that a URL can disclose that a person viewed a certain webpage, yet still "function[] like an 'address,'" and not "contents" of a communication. *Id.* at 1107-08; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (concluding that even if Google could "infer a user's traits and habits" from URLs related to the user's searches, "'educated guesses' about a user's traits and habits," do not amount to "contents" of the communications).

Here, Plaintiff has not alleged any facts to show the interception, disclosure, or intended use of "contents" of her communications via the Website. Despite conclusory characterizations that Defendant shares the "contents" of her "communications" with third parties, Plaintiff describes the sharing of a website URL, i.e., the address of the pages visited on the public Website by users who may or may not have any relationship with Defendant, by transmission of "SubscribedButtonClick" events. (SAC ¶¶ 96-109.) The Second Amended Complaint only includes allegations regarding a hypothetical user's experience on the Website, as opposed to allegations specific to Plaintiff and her experience. (*See, e.g., id.* ¶¶ 113-14.) Plaintiff attempts to make specific allegations as to her searches and advertisements that allegedly appeared on her

Facebook. (*Id.* ¶¶ 134-35.) But these generic allegations do not plausibly show that any "contents" of private communications were disclosed to third parties because of Plaintiff's use of the Website. Plaintiff fails to plead any facts showing that her communications *within* the patient portal were transmitted to any third party.

To the extent courts have suggested that some URLs could rise to the level of a communication, the rule of lenity requires the ambiguity to be resolved in Defendant's favor. "[A]pplication of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal." *Liparota v. United States*, 471 U.S. 419, 427 (1985); *see also Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) ("Although this is a civil suit, the Wiretap Act also carries criminal penalties so Google's reliance on the rule of lenity is not unfounded."). Because courts have concluded that URL information can still function like an address and not amount to "contents" of a communication, *In re Zynga*, 750 F.3d at 1107, there is not fair warning concerning the alleged illegality of the use of tracking technology, especially in today's society in which there is a robust marketplace for online browsing data. *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*.") (emphasis in original). Further, Seventh Circuit precedent is clear: a person does not have a reasonable expectation of privacy in his or her IP address. *United States v. Mitrovich*, 95 F.4th 1064, 1068 (7th Cir. 2024) ("a person has no reasonable expectation of privacy in their IP address because they voluntarily share it with third parties while browsing the internet.") (citing *United States v. Caira*, 833 F.3d 803, 809 (7th Cir. 2016) ("Because Caira voluntarily shared his I.P. addresses with Microsoft, he had no reasonable expectation of privacy in those addresses.")).

### 2. Plaintiff Fails to State a Claim for an Unauthorized Divulgence by Electronic Communications Service and a Violation of the SCA (Counts IV-V)

Defendant is not an electronic communications service provider, which is fatal to Plaintiff's ECPA claim for an unauthorized divulgence and SCA claim. The ECPA provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication . . . while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a). An "electronic communication service" is defined as "any service which provides the users thereof the ability to send or receive wire or electronic communications." *Id.* at § 2510(15). The definition of "electronic communication service" is the same under the ECPA and the SCA and both statutes require the defendant to be a provider of an "electronic communication service." 18 U.S.C. § 2711(1); *id.* at § 2702(a)(1); *id.* at § 2511(3)(a).

Here, Defendant is a non-profit hospital system, not an electronic communications service. (SAC ¶ 34.) The Court previously agreed with this point and held that Plaintiff had not plausibly alleged that Defendant was an "electronic communication service provider" as defined by the ECPA and SCA. (Order at 12-14.) Simply operating a website is not enough to transform a website owner to an electronic communication service provider. (Order at 13.) This Court's holding is consistent with the others that have dismissed similar ECPA and SCA claims. *See, e.g., Kurowski I*, 659 F. Supp. 3d at 940 ("[C]ompanies that merely purchase or use electronic communications services in the conduct of their ordinary business are not themselves electronic communications services."); *Jarrett v. Upperline Health, Inc.*, No. 1:23-CV-01261-RLY-CSW, 2025 WL 3067545, at *12 (S.D. Ind. Aug. 8, 2025) (under similar circumstances, holding "[a] healthcare organization

like Upperline is not in the electronic communications business" and dismissing § 2511(3)(a) ECPA claim and SCA claim).

In analyzing the cases Plaintiff cited in her opposition to the motion to dismiss the First Amended Complaint, the Court reviewed *In re BetterHelp, Inc.*, No. 23-cv-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024), which held that the online telehealth platform provider BetterHelp was an electronic service provider because it facilitated two-way electronic communications between its customers and third-party therapists. (Order at 13-14.) Here, the Court found that Plaintiff had not made "any similar allegations that Defendant facilitated two-way communications between herself and third parties, such that *In re BetterHelp* is distinguishable." (Order at 13-14.)

In an effort to address this issue, Plaintiff simply added one sentence to the ECPA and SCA claims which mirrored the language of *In re BetterHelp, Inc.*:

> 268. ~~355.~~ **Electronic Communication Service**. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant's Website is an electronic communication service which provides to users thereof the ability to send or receive electronic communications; in the absence of Defendant's Website, internet users could not send or receive communications regarding Plaintiff' and Class Members' Private Information. Defendant's Website facilitates two-way electronic communications between patients and third-party doctors.

281. ~~368.~~ **Electronic Communication Service.** ECPA defines "electronic

93

---

communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant intentionally procures and embeds various Plaintiff's Private Information through the tracking technology used on Defendant's Website, which qualifies as an Electronic Communication Service. Defendant's Website facilitates two-way electronic communications between patients and third-party doctors.

(Ex. 1 at 91, 93-94.) Plaintiff cannot simply cut and copy language from another case and plead that here without any plausible factual basis to do so. Regardless, a single additional conclusory allegation to each count does not transform the pleading. As with the First Amended Complaint, this Second Amended Complaint fails to plausibly allege that Defendant does anything more than operate a website, and these claims should be dismissed. "To hold otherwise would radically transform the breadth of the ECPA and courts have consistently recognized as much." *Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (collecting cases).

### C. Plaintiff's Negligence Claims Are Barred by the Tort Immunity Act (Counts I-II)

Although Plaintiff's negligence claims survived the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), they must be dismissed now because they fall squarely under the Tort Immunity Act. "The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government." *Moore v. Green*, 848 N.E.2d 1015, 1019

(Ill. 2006) (citing 745 ILCS 10/1-101.1(a)). The definition of local public entity includes "any not-for-profit corporation organized for the purposes of conducting public business." 745 ILCS 10/1-206. *See, e.g., Smith v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 569 N.E.2d 41, 43 (Ill. App. Ct. 1991) (holding that METRA, "a not-for-profit corporation with no shareholders, funded with public funds from RTA and operat[ing] a commuter rail line in the public interest," is a local public entity under the Tort Immunity Act). Defendant is part of a hospital district organized under Illinois law,[4] and thus, it is subject to the protections of the Tort Immunity Act. *See Sappington v. Sparta Mun. Hosp. Dist.*, 245 N.E.2d 262, 262 (Ill. App. Ct. 1969) (holding that "a hospital district is a municipal corporation" under the Tort Immunity Act).

Plaintiff's alleged negligence claims fall squarely under the immunities provided in Section 2-109, Section 2-201, and Section 2-204. The Tort Immunity Act provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Under Section 2-201, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201; *see also In re Chicago Flood Litig.*, 680 N.E.2d 265, 273 (Ill. 1997), *holding modified in different part by Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 160 N.E.3d 895 (Ill. 2019) (holding that Section 2-201 "does not contain an immunity exception for willful and wanton misconduct"). Section 2-204

---

[4] *See History*, Culbertson Mem'l Hosp., https://cmhospital.com/about-us/history (last accessed Nov. 17, 2025) ("Today, the Schuyler County Hospital District is a nonprofit, tax-supported organization that includes Culbertson Memorial hospital and rural health clinics in Astoria, Beardstown, Rushville and Table Grove."); *see also* 70 ILCS 910/22 ("All courts shall take judicial notice of the existence of a Hospital District and of the area of jurisdiction of an existing District.").

further provides that "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204.

The Second Amended Complaint alleges Defendant used certain third-party tracking technologies "for marketing and sales purposes" to have high impact digital marketing campaigns. (SAC ¶¶ 77-81; *see also id.* at ¶¶ 226-27.) Because these allegations are directed at Defendant's determination of policy or exercise of discretion, Defendant is entitled to immunity under Section 2-109 and Section 2-201 of the Tort Immunity Act. Defendant is also entitled to immunity under Section 2-109 and Section 2-204 because Plaintiff's alleged injuries were caused by third parties who allegedly received private information of Plaintiff's and other hypothetical users of the Website. (SAC ¶¶ 68-71.) Neither of Plaintiff's claims can survive this immunity. *See, e.g., DiMarco v. City of Chicago*, 662 N.E.2d 525, 529 (Ill. App. Ct. 1996) (applying Tort Immunity Act to negligence action). Thus, the negligence claims should be dismissed with prejudice pursuant to the Tort Immunity Act.

## IV. CONCLUSION

For the foregoing reasons, Defendant Sarah D. Culbertson Memorial Hospital respectfully request that the Court dismiss the Second Amended Complaint, with prejudice.

**Oral Argument Requested**

Defendant requests oral argument and believes it may be helpful to the court due to the number of legal issues raised in the Second Amended Complaint and the fact that the law governing claims raised following a data breach event is still evolving.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Maria A. Boelen*

Maria A. Boelen
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
mboelen@bakerlaw.com

Christopher A. Wiech
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734
cwiech@bakerlaw.com

*Counsel for Defendant Sarah D. Culbertson Memorial Hospital*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, November 17, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*s/ Maria A. Boelen*
Maria A. Boelen