E-FILED
Monday, 01 December, 2025 04:47:46 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

ALANA HANNANT, individually, and on behalf of all others similarly situated,

*Plaintiff*,

v.

CULBERTSON MEMORIAL HOSPITAL FOUNDATION d/b/a SARAH D. CULBERTSON MEMORIAL HOSPITAL,

*Defendant*.

Case No.: 4:24-cv-04164-SLD-RLH

Honorable Chief Judge Sara Darrow

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Alana Hannant, individually (hereinafter, "Plaintiff"), and on behalf of all others similarly situated, by and through counsel, and for her Memorandum of Law in Opposition to the Motion to Dismiss the Second Amended Class Action Complaint filed by Defendant, Sarah D. Culbertson Memorial Hospital ("Defendant" or "Culbertson"), respectfully states as follows:

## I. INTRODUCTION

As the Court is familiar, Plaintiff alleges that Culbertson purposefully installed third-party trackers on its website, https://cmhospital.com/ (the "Website"), including the Meta Pixel. When patients like Plaintiff visited Culbertson's Website, the trackers recorded patients' confidential health communications and private health information and then disclosed this information in combination with identifying information (such as IP addresses or identifying cookies like the "c_user cookie) to third parties, like Facebook and Google, without these patients' consent or knowledge. "Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*,

372 Ill. App. 3d 1077, 1082 (2007). Illinois state courts, Illinois federal courts—*including no less than five separate Northern District of Illinois Courts*—the Seventh Circuit, and courts across the country all agree—claims like Plaintiff's are legally valid.[1] Now, with the filing of the Second Amended Complaint, curing previous deficiencies, the Court should deny Culbertson's Motion to Dismiss, and allow this action to proceed to discovery and beyond.

## II. BACKGROUND

### A. Factual Background

Defendant is a hospital system in Rushville, Schuyler County, Illinois, with more than 200 staff members, offering in-patient services, a 24-hour-a-day emergency department, multiple outpatient specialty clinics, and four family practice clinics. Second Amended Class Action Complaint, ECF No. 14 ("SAC") ¶¶ 8, 38-41. Culbertson encourages its patients to use its Website, along with its various web-based tools and services (collectively, the "Online Platforms"), to learn about Culbertson on its website homepage, to find medical providers, to find and research medical services, to access a patient portal,[2] to pay bills, to search the website, including for personal medical treatment information,[3] and more. *Id.* ¶ 11.

Plaintiff has been a patient of Defendant's for approximately two years, receiving

[1] *See, e.g.*, *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's judgment on the pleadings); *Stein, et al., v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ("*Elmhurst*") (in online tracking technology case, denying defendant's motion to dismiss); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* **Exhibit A-1** (cases finding same).

[2] https://cmhospital.com/patients-and-visitors/patient-portal (last visited Aug. 12, 2024).

[3] *E.g.,* search for "cancer," https://cmhospital.com/search?q=cancer (last visited Aug. 12, 2024).

healthcare services from Culbertson, including a biopsy and imaging. *Id.* ¶ 132. She used Culbertson's Website beginning on or around November 2021 and last in September 2023 to find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more. *Id.* ¶ 134. Through its use of trackers, including the Meta Pixel, Defendant disclosed to third parties like Facebook the Private Information that patients like Plaintiff submitted on Defendant's Website, including, *inter alia*: browsing activities; the pages they viewed and the buttons they clicked; information concerning their statuses as patients such as patient portal activities; information concerning their medical concerns such as the providers they searched for and viewed, and the medical services they viewed; as well as their identifying information, such as IP addresses and identifying cookies. *Id.* ¶ 90.

Indeed, on information and belief, Culbertson disclosed patients' data to Facebook via Meta Pixel with ID 1093282744746630 from at least June 23, 2021 through as recently as October 31, 2023. *Id.* ¶ 91. Moreover, Culbertson has disclosed patients' data to Google via a Google Tag Manager ("GTM") with account with ID GTM-P99ZF6J from at least October 19, 2013 through as recently as October 31, 2023. *Id.* ¶ 92. ***Unique to Plaintiff***, based on her use of the Website, through its use of the Meta Pixel and other tracking technologies, Culbertson disclosed to Facebook: the pages and content Plaintiff viewed; her seeking of medical treatment; Plaintiff's status as a patient; information regarding Plaintiff' patient portal activity; the specialties of the medical providers Plaintiff searched for and viewed; the names of the medical providers Plaintiff searched for and viewed; the search results that Plaintiff clicked on; the medical services Plaintiff viewed; and, Plaintiff's identity via her IP addresses and/or "c_user" cookie and/or Facebook ID. *Id.* ¶¶ 97, 140. **Indeed, Defendant transmitted Plaintiff's name and location of her personal**

**physician, the medical treatment she researched including information related to an MRI test, her treatment search information, her research on obtaining medical records, and her log in and use of the patient portal, to third parties like Google and Facebook.** *Id*. ¶ 134. Facebook's "Your activity off Meta technologies" report confirms that Facebook received the data Culbertson shared with Facebook. *Id*. ¶ 98

After Plaintiff used Defendant's Website, advertisements for MRI tests and advertisements for doctors treating back problems began appearing in her Facebook feed. Clearly, the information Defendant transmitted to third parties like Google and Facebook was used to target her with particular advertising associated with her particular health conditions. *Id.* ¶ 135.

As a direct and proximate result of Defendant's Disclosure, Plaintiff suffered myriad injuries, including: loss of privacy; unauthorized disclosure of and access to her Private Information by third parties; targeted health-related advertisements on Facebook reflecting her private medical treatment information; the difference between the costs of the medical services Plaintiff for which she paid, which included reasonable privacy and data security protections for her Private Information, and that without the privacy and security protections for which she paid, due to Defendant's Disclosure; the portion of Culbertson's revenues and profits attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of Culbertson's savings in marketing costs attributable to collecting Plaintiff's Private Information without authorization and sharing it with third parties; the portion of Culbertson's revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff as a result of collecting Plaintiff's Private Information without authorization and sharing it with third parties; the value to Plaintiff of surrendering her choice to keep her Private Information private

and allowing Culbertson to track her data;[4] embarrassment, humiliation, frustration, and emotional distress; decreased value of Plaintiff's Private Information; lost benefit of the bargain; increased risk of future harm resulting from future use and disclosure of her Private Information; and statutory damages. *Id.* ¶ 142.

**B. Procedural History**

Plaintiff filed her original Class Action Complaint on September 6, 2024 (ECF No. 1). On Plaintiff's motion, on February 5, 2025, the Court granted Plaintiff leave to file her Amended Class Action Complaint (ECF No. 13).[5] On February 19, 2025, Defendant filed its Motion to Dismiss the Amended Complaint (ECF No. 16). In its August 20, 2025 Order (ECF No. 24 or "August 2025 Order"), the Court granted the motion in part and denied it in part, dismissing Plaintiff's claims except the negligence and negligence *per se* claims, but granting Plaintiff leave to file an amended complaint by September 10, 2025. Plaintiff filed the operative Second Amended Class Action Complaint ("SAC"), and on October 17, 2025, the Court granted Plaintiff's belated motion for leave to file the same of record, and overruled Defendant's motion to strike (ECF No. 32). In the SAC, Plaintiff reiterated her claims for negligence (SAC ¶¶ 225-34), and negligence *per se* (*id.* ¶¶ 235-46), and re-pleaded her claims for violation of the ECPA, 18 U.S.C. §§ 2511(1), *et seq.* (*id.* ¶¶ 247-65), violation of the ECPA, 18 U.S.C. § 2511(3)(a)

---

[4] The amount of these damages can be based on a baseline monthly compensation provided to participants in a Google consumer research study, the Ipsos Screenwise Panel where the baseline compensation to participants was $3 per device per month.

[5] The Amended Complaint included causes of action sounding in Negligence; Negligence *Per Se*; Invasion of Privacy—Intrusion Upon Seclusion; Breach of Implied Contract; Unjust Enrichment; Breach of Implied Duty of Confidentiality; violation of Illinois Consumer Fraud and Deceptive Business Practices Act, ("CFDPA"), 815 Ill. Comp. Stat. § 505/1, *et seq.*; violation of the Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14, *et seq.*; violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; violation of ECPA, 18 U.S.C. § 2511(3)(a) ("Unauthorized Divulgence By Electronic Communications Service"); violation of Title II of the ECPA, 18 U.S.C. § 2702, *et seq.*; and violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*

("Unauthorized Divulgence By Electronic Communications Service") (*id.* ¶¶ 266-278) and violation of Title II of the ECPA, 18 U.S.C. § 2702, *et seq.* (*id.* ¶¶ 279-295) (collectively, "ECPA Claims"). Culbertson now moves to dismiss Plaintiff's ECPA Claims in the SAC, as well as her negligence claims on the basis of immunity.

For the reasons set forth below, under the applicable Fed. R. Civ. P. 12(b)(6) standard, Defendant's Motion to Dismiss the SAC must be denied.

## III. LEGAL STANDARD

It is axiomatic that Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a Rule 12(b)(6) motion "does not require 'detailed factual allegations'"; it merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In deciding a motion to dismiss, the court must "accept[] the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor." *Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *3 (N.D. Ill. July 28, 2009). Still, it is pivotal that "[D]efendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiff[] or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008).

## IV. ARGUMENT

As follows, when the facts alleged by Plaintiff in the SAC are taken as true, and in the light most favorable to her and the proposed Class, Culbertson fails to meet its burden under Fed. R. Civ. P. 12(b)(6) to show Plaintiff has failed to plead plausible facts to create a reasonable inference

that Culbertson is liable under each of Plaintiff's causes of action. As such, the Court must deny Defendant's Motion to Dismiss the SAC.

**A. Plaintiff States a Claim for Violation of the ECPA, 18 U.S.C. §§ 2511(1), *et seq*.**

First, Culbertson moves to dismiss Plaintiff's claim in the SAC under the ECPA, 18 U.S.C. § 2511(1). "The statute makes it unlawful to 'intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *Elmhurst*, 2025 WL 580556 (quoting 18 U.S.C. § 2511(1)(a)).

Most basically, in the SAC, Plaintiff alleges that by utilizing and embedding the tracking technology on its Website, via the Meta Pixel, Defendant intentionally intercepted, endeavored to intercept and procured another person to intercept the electronic communications of Plaintiff and Class Members—specifically, their communications regarding Private Information (including PII and PHI), and medical treatment—in violation of 18 U.S.C. §§ 2511(1)(a), (c). SAC ¶¶ 256-57. There, Plaintiff alleges that the "electronic, mechanical, or other device[s,]" as "any within the meaning of 18 U.S.C. § 2510(5) include Plaintiff's and Class Members' browsers, their computing devices; Defendant's web-servers; and Defendant's Website." *Id*. ¶ 253. In its Motion to Dismiss, Defendant argues that Plaintiff failed to cure the deficiencies outlined in the Court's October 2025 Order dismissing this ECPA claim. However, this ignores the additions to Plaintiff's SAC and the many similar cases upholding ECPA claims in tracking technology cases like the instant.

***i. Plaintiff Plausibly Pleads the Crime-Tort Exception under 18 U.S.C. § 2511(2)(d)***

In the SAC, Plaintiff plausibly pleads the Crime-Tort Exception under 18 U.S.C. § 2511(2)(d). Although Culbertson was a party to the subject medical communications, 18 U.S.C. § 2511(2)(d) contains the one-party consent exception, under which Plaintiff properly asserts the Crime-Tort exception of the statute (the one-party consent rule does not apply if "such

communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."). 18 U.S.C. § 2511(2)(d)

Previously, in its August 2025 Order (ECF No. 24) dismissing this ECPA claim, the Court looked to the nature of the data intercepted and transmitted by Culbertson to ascertain whether Defendant's purpose was to commit a crime or tort by violating HIPAA, *to wit*, 42 U.S.C. § 1320d-6's prohibition on sharing Individually Identifiable Health Information ("IIHI," as defined by 42 U.S.C. § 1320d(6)), as to whether the Private Information disclosed actually related to "…the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual."). ECF No. 24, pp. 6-7. In dismissing this ECPA claim prior, this Court examined cases where plaintiffs plausibly invoked the crime-tort exception, *i.e. Kane v. Univ. of Rochester*, 2024 WL 1178340, at *5–7 (W.D.N.Y. Mar. 19, 2024) (where defendant's transmission of clicks to schedule physician appointments, along with the c_user cookie and Facebook ID, as well as searches for physicians, and "…the user's IP address, the name and specialty of the physician a user has selected, as well as any other search parameters a user enters, such as gender and specialty[,]" were found sufficiently plausible to state the crime-tort exception); and *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791–93 (N.D. Cal. 2022).

In contrast, in cases like *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), the court found that tracking of URLs "which 'point[ed] to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information'" did not relate "to the 'past, present, or future physical or mental health or condition of an individual,'

because the 'pages contain[ed] general health information that [wa]s accessible to the public at large,' such that HIPAA did not apply." ECF No. 24, pg. 7, quoting *Smith* at 955. And in *Kurowski I* the court held that the "[plaintiff] has not alleged sufficient facts, however, to support an inference that [defendant] disclosed its patients' individually identifiable health information, at least as that term is defined by the statute." *Kurowski I*, 659 F. Supp. 3d at 938. Ultimately, this Court previously ruled that "…Plaintiff's allegations of her own experience, as opposed to a potential class member, lack the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation." ECF No. 24, pg. 9 citing to Am. Compl. ¶¶ 132–40.

But Plaintiff has clarified her allegations and cured any factual deficiencies. Here, in the SAC, Plaintiff had pleaded sufficient facts to invoke the crime-tort exception to 18 U.S.C. § 2511(2)(d). Plaintiff specifically pleads that Culbertson intentionally used the wire or electronic communications to increase its profit margins and save on marketing costs, with the tortious and criminal purpose to violate federal provisions, HIPAA, and the FTC Act, and state legal provisions (e.g., the Illinois Medical Patient Rights Act ("MPRA"), 410 Ill. Comp. Stat. 50/3(d)), to invade Plaintiff and Class Members' privacy, and breach its fiduciary duty of confidentiality. *Id*. ¶¶ 176, 261, 265. And the SAC has added key facts that Culbertson transmitted Plaintiff's Private Information, not only including the name and location of her personal physician, the medical treatment she researched including information related to an MRI test, her treatment search information, her research on obtaining medical records, **and her log in and use of the patient portal**, to third parties like Google and Facebook. SAC ¶ 134. This is only in addition to the putative Class Members' allegations, *in toto*, that, through the Meta Pixel and other trackers, Culbertson transmitted Plaintiff's and the Class Members': browsing activities; the pages they viewed and the buttons they clicked; information concerning their statuses as patients such as

patient portal activities; information concerning their medical concerns such as the providers they searched for and viewed, and the medical services they viewed; as well as their identifying information, such as IP addresses and identifying cookies. *Id*. ¶ 90.

Thus—especially with the clarified allegations in the SAC as to Plaintiff logging onto the patient portal—it is clear that Culbertson intercepted and transmitted information related to Plaintiff's "…past, present, or future physical or mental health or condition...") as contemplated by 42 U.S.C. § 1320d(6). Plaintiff literally alleges this. SAC ¶ 137. And this contention is far from conclusory: the exposed data here is nearly-identical to that in *Kane* (*supra*), where there were clicks to schedule physician appointments, transmitted along with the c_user cookie and Facebook ID, as well as searches for physicians, and "…the user's IP address, the name and specialty of the physician a user has selected, as well as any other search parameters a user enters, such as gender and specialty." *Kane*, 2024 WL 1178340, at *5–7. Here, not only were Plaintiff's (and the Class Members') Private Information, pertaining to her/their personal medical care, such as Plaintiff's name and location of her personal physician, medical treatment she researched, her treatment search information, her research on obtaining medical records, and palpably, her, log in and use of the patient portal, but also the identifying c_user cookie and Facebook ID. *See* SAC ¶¶ 97, 134, 140. In short, the intercepted and transmitted data is clearly, plausibly, IIHI as defined by 42 U.S.C. § 1320d(6), which Plaintiff explicitly alleged Culbertson's purpose was to violate. SAC ¶ 265.

Moreover, because Plaintiff has alleged that Defendant's purpose in the interception and transmission was to violate HIPPA, there is a criminal purpose as found in *Elmhurst*, 2025 WL 580556, at *4 ("[HIPAA] imposes a criminal penalty for knowingly 'disclosing individually identifiable health information to another person.'") (quoting 42 U.S.C. § 1320d-6(a)(3)).

Many other courts have held that plaintiffs state a valid ECPA claim, under the crime-tort

exception, under facts similar to those here. *See Kurowski III,* 2023 WL 8544084, at *3; *Kurowski IV,* 2024 WL 3455020, at *6; *Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221, at *9 (S.D. Ill. Sept. 30, 2025), *on reconsideration in part*, No. 3:24-CV-2332-NJR, 2025 WL 3235753 (S.D. Ill. Nov. 19, 2025); *Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, No. 3:24-CV-02284-NJR, 2025 WL 2771415, at *11 (S.D. Ill. Sept. 29, 2025); *Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) ("With all reasonable inferences drawn in its favor, the [complaint] plausibly alleges that Mount Sinai knowingly disclosed individually identifiable health information to Pixel Information Recipients and thereby violated HIPAA."); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023). This Court should allow this claim to proceed, as well.

***ii. Plaintiff Plausibly Alleges the Intercepted Contents Element, 18 U.S.C. § 2511(1)***

Next, as to Plaintiff's ECPA claim under 18 U.S.C. § 2511(1), Defendant complains that fails to allege sufficient facts to plausibly show that the "contents" of any communications were disclosed to a third party, as defined by 18 U.S.C. § 2510(8). "'Contents' refers to the 'intended message conveyed by the communication"—it does not include record information regarding the characteristics of the message that is generated in the course of the communication.'" *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (citing *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106 (9th Cir. 2014)). But, again, Culbertson's contention ignores the well-pleaded allegations in the SAC that, rather than mere URL addresses, Defendant intercepted, and disclosed, the substance of the subject communications, *i.e.*, Plaintiff's and the Class Members, browsing

activities; the pages they viewed and the buttons they clicked; information concerning their statuses as patients such as patient portal activities; information concerning their medical concerns such as the providers they searched for and viewed, and the medical services they viewed; as well as their identifying information, such as IP addresses and identifying cookies. *Id*. ¶ 90.

Courts have rejected the exact argument that Defendant advances. *See Kane*, 2024 WL 1178340, at *6. And in *Meta Platforms, Inc.*, the court said:

> In my view, the log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute. Unlike in *Zynga*, the URLs at issue here would not merely reveal the name of a Facebook user or group—as Smith explained, [] the transmitted URLs include both the "path" and the "query string." Smith Decl. ¶¶ 50–51; *see also id.* ¶ 189 (showing hardfordhospital.org/services/digestive-health/conditions-we-treat/colorectal-small-bowel-disorders/ulcerative-colitis URL).

*Meta Platforms, Inc.*, 690 F. Supp. 3d at 1076–77. Just like in that case, the information disclosed in the instant case does not only include URLs, but the actual substance of Plaintiff's and the proposed Class's personal medical information. This constitutes "contents" of the communications intercepted and transmitted by Defendant under applicable law. Defendant's Motion to Dismiss must be denied as to this argument, as well.

### B. Plaintiff States a Claim for violation of ECPA, 18 U.S.C. § 2511(3)(a) ("Unauthorized Divulgence by Electronic Communications Service")

Next, Defendant argues it is entitled to dismissal of Plaintiff's claim under 18 U.S.C. § 2511(3)(a), because it is not an "electronic communications service provider." But Plaintiff has argued persuasively against this contention before, cured the deficiencies via well-pleaded additional allegations in the SAC, and Culbertson's argument continues to rest on a misreading of the statute. 18 U.S.C. § 2511 imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e.*, made available, its website to the public. *See, e.g.*, SAC ¶¶ 10-11. Moreover,

Plaintiff has pleaded that Defendant's Website is an electronic communication service which provides to users the ability to send or receive electronic communications, and (as added in the SAC), in so doing facilitates two-way electronic communications between patients and third-party doctors. *Id.* ¶ 268. To the extent that the Court previously rejected Plaintiff's ECPA claim, looking to *In re BetterHelp, Inc.*, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024), Plaintiff now alleges plausible facts just like those in that case. Because Culbertson's Website facilitated electronic communications between Plaintiff (and the Class) and third-party physicians—it is an "electronic communications service provider" and 18 U.S.C. § 2511(3)(a) applies. It remains that the majority of Illinois and other courts that have addressed ECPA claims in the hospital website privacy context have concluded that ECPA claims have merit. *See, e.g.*, *Loyola*, 2024 WL 3338941, at *5–7; *Aspen Dental*, 2024 WL 4119153, at *6; *Kurowski IV,* 2024 WL 3455020, at *6; *Hartley*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024); *In Re BetterHelp*, 2024 WL 4504527, at *2 (dismissing this exact argument, as defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers."). To the extent one may argue that the ruling in *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) defeats Plaintiff's argument, it is significant that the decision in that case relied on defendant's position as a party to the communications. But, as set forth above, the Crime-Tort exception of 18 U.S.C. § 2511(2)(d) clearly applies, to the opinion in *Chestnut Health* is by no means dispositive.

### C. Plaintiff's Negligence and Negligence *Per Se* Claims Are not Barred by the Tort Immunity Act

Finally, Culbertson argues that Plaintiff's Negligence and Negligence *Per Se* claims are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1–101.1(a) ("Tort Immunity Act"). Previously, in the August 2025 Order, this Court rejected Defendant's attempts to secure dismissal of Plaintiff's negligence and negligence *per se*

claims on the grounds of lack of compensable injury. Now, in a another effort to defeat Plaintiff's negligence claims, Culbertson asserts—for the first time—that it is immune under the Tort Immunity Act, as Defendant is part of a hospital district organized under Illinois law, and is subject to the protections of the Tort Immunity Act, and because Culbertson's decision to use tracking technologies was within its "determination of policy or exercise of discretion…" Mot., pg. 15.

Defendant's argument is without merit for numerous reasons. At the outset, although Culbertson argues, in a conclusory manner that its hospital is a municipal corporation under the Act, relying on *Sappington v. Sparta Mun. Hosp. Dist.*, 106 Ill. App. 2d 255, 256, 245 N.E.2d 262, 263 (Ill. App. Ct. 1969), Culbertson has failed to show this status. Although 745 ILCS 10/1–206 includes "…any not-for-profit corporation organized for the purpose of conducting public business…" a defendant seeking this immunity must still show it is "'tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government." *Brugger v. Joseph Acad., Inc.*, 202 Ill. 2d 435, 438, 781 N.E.2d 269, 271 (2002) quoting *Carroll v. Paddock*, 199 Ill.2d 16, 27, 262 Ill.Dec. 1, 764 N.E.2d 1118 (2002). Defendant has yet to present any facts supporting this contention, nor would this be appropriate at the motion to dismiss stage. And in *Carroll*, the court held that a defendant community hospital, and managing board, were not "organized for the purpose of conducting public business. [and thus] neither of those not-for-profit corporations or their employees are entitled to assert the immunities and defenses contained within the Tort Immunity Act." *Carroll*, 199 Ill. 2d at 28, 764 N.E.2d at 1125. Because Culbertson has not made this threshold showing that it is organized for public business and controlled by the government, Defendant has failed to show entitlement to immunity under the Tort Immunity Act, and its motion to dismiss on this basis must be denied.

Further still, it is true that "[a] local public entity is not liable for an injury resulting from

an act or omission of its employee where the employee is not liable" under 745 ILCS 10/2-109, and "…a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. And in the instant case, Plaintiff brings her claims against Culbertson, by and through its agents, employees, and other representatives. But Defendant has not advanced anything to show that its, and its employees,' acts or omissions were either determining policy or in the exercise of discretion. In fact, Defendant's Notice of Privacy Practices (SAC Ex. B) specifically prohibits Culbertson from sharing information for marketing purposes or for sale of protected health information. Accordingly, Defendant's employees had no discretion as to whether or not to share patient Private Information—rather, this was a ministerial duty, as Defendant was prohibited from selling PHI or using the information for marketing purposes under Culbertson's own policies.

Moreover, "[d]etermining whether an action is discretionary or ministerial 'resists precise formulation and ... must be made on a case-by-case basis.'" *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 848 (N.D. Ill. 2020) quoting *Snyder v. Curran Twp*., 167 Ill.2d 466, 212 Ill.Dec. 643, 657 N.E.2d 988, 993–94 (Ill. 1995) (other citations omitted). And "[c]ourts typically categorize particular acts as discretionary or ministerial at the summary judgment stage, after the parties have had the benefit of discovery." *Id*. (citation omitted). As such, it would be inappropriate at this stage for the Court to grant Defendant immunity under the Tort Immunity Act without the benefit of meaningful discovery as to the nature of Culbertson's employees' conduct.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss the SAC be denied in its entirety.

Dated: December 1, 2025

Respectfully submitted,

*/s/ Andrew E. Mize*

J. Gerard Stranch, IV
Andrew E. Mize
Emily E. Schiller
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com
eschiller@stranchlaw.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, December 1, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Andrew E. Mize*
Andrew E. Mize
***Counsel for Plaintiff and the Proposed Class***