E-FILED
Monday, 27 July, 2026  03:56:03 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

ALANA HANNANT, individually and on behalf of all others similarly situated,

    *Plaintiffs,*

v.

CULBERTSON MEMORIAL HOSPITAL FOUNDATION,

    *Defendant.*

Case No. 4:24-cv-04164-SLD-RLH

## ORDER & OPINION

This case concerns the use of website-tracking technology on a healthcare provider's website. Many healthcare providers maintain websites through which patients can pay bills, locate physicians, schedule appointments, and access medical records. Some of those websites also incorporate tracking technologies that collect information about visitors, such as IP addresses, browsing history, and interactions with the website. The technologies then transmit that information to advertising platforms that use it to deliver advertisements based on the visitor's browsing activity. Thus, a person who visits a hospital's website to research treatment for high cholesterol may later encounter advertisements on social media promoting cholesterol medications.

Plaintiff Alana Hannant contends that Culbertson Memorial Hospital employed this technology in violation of the Electronic Communications Privacy Act ("ECPA"). 18 U.S.C. §§ 2510–2523. Specifically, she alleges that the Hospital used

website-tracking technology to intercept and disclose her electronic communications without authorization, thereby subjecting it to liability under the statute. ("Intercept" in this context is defined broadly to include the acquisition of electronic information. *See id.* § 2510(4).)

Hannant and the putative class, however, face a significant obstacle: The ECPA is a one-party consent statute, meaning that a party to a communication generally may disclose that communication without violating the Act. *See id.* § 2511(2)(d). Because Culbertson allegedly acquired the information through its own website, it was a party to the communications and ordinarily could disclose them.

Hannant relies on the statutory exception to that rule. The one-party consent provision does not apply if the communication was intercepted or disclosed "for the purpose of committing any criminal or tortious act." *Id.* She alleges that Culbertson's disclosure of patient information through website-tracking technology violated the Health Insurance Portability and Accountability Act ("HIPAA"). 42 U.S.C. § 1320d–6. According to Hannant, that alleged HIPAA violation constitutes the independent criminal act necessary to remove Culbertson from the protection of the ECPA's one-party consent provision.

In allowing Hannant's ECPA claim to proceed over Culbertson's motion to dismiss, this Court agreed. It rejected Culbertson's argument that its purpose for acquiring patient information was to make money—not to violate HIPAA. In doing so, the Court reasoned that both can be true at once: "The fact that Culbertson's *ultimate end* was financial does not insulate it from the reasonable conclusion that it

2

acted for the purpose of committing an act that was criminal or tortious." (Doc. 38 at 15 (emphasis added).) And Hannant's "complaint alleges that Culbertson's interception was for the purpose of an independent criminal act, so the crime-tort exception applies." (Doc. 38 at 15.) The Court nonetheless recognized that the ECPA's crime-tort exception has divided district courts around the country. In particular, they disagree about whether the exception applies when a hospital's express purpose was not criminal or tortious, but instead financial. (*See* Doc. 38 at 13–14.)

That uncertainty surrounding the crime-tort exception may soon be resolved—at least in the Seventh Circuit. An interlocutory appeal recently filed in a separate case asks whether these website-tracking healthcare cases rest on a valid interpretation of the ECPA's crime-tort exception. *Stein v. Edward-Elmhurst Health*, No. 26-1742 (7th Cir. Apr. 10, 2026). Shortly after *Stein* was docketed, Culbertson asked the Court to stay these proceedings. It argues that *Stein* may dispose of Hannant's ECPA claim—the sole remaining federal claim. If *Stein* is resolved in its favor, Culbertson suggests, this Court will lack jurisdiction over Hannant's remaining state-law claims. A stay would thus avoid unnecessary expense in the interim if discovery is allowed to commence. Hannant disagrees. Whatever the outcome of *Stein*, she says, her state-law negligence claims would remain. And because this Court would have an independent ground to exercise jurisdiction over them, a stay would simply delay the inevitable.

A stay is an "order to suspend all or part of a judicial proceeding." *Stay, Black's Law Dictionary* (12th ed. 2024). The power to impose one is "incidental to the power

3

inherent in every court to control the disposition" of the cases on their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Ultimately, the decision is a discretionary one. *See Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999). Here, all agree that *Stein* arises from facts strikingly similar to this case, it has a similar procedural history, and—most importantly—the *Stein* plaintiffs' legal theory is indistinguishable from the theory Hannant presses here.

But these observations only begin the inquiry. The critical question is not whether *Stein* is similar to this case; it's how—if at all—the outcome of *Stein* will *affect* this case. True, courts frequently impose a stay when "a higher court in a separate case will decide issues of law that are significant to the case sought to be stayed." *Johnson v. Navient Sols., Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015).[1] But the mere existence of a similar case in a higher court does not compel that result. *See id.* at 1008. Instead, courts consider both the similarity of legal issues and the likely effect of the higher court's ruling. The practical effect of parallel litigation—not the similarity of the legal issues in some abstract sense—is what matters. *See id.* (declining to stay because the higher court's forthcoming decision would "not affect [plaintiff's] entitlement to relief").

Culbertson observes—correctly—that *Stein* presents the following question: whether the ECPA's crime-tort exception requires a defendant to harbor criminal or

---

[1] *See also White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 461–62 (S.D. W. Va. 2013) ("A district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case."); *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (noting that proceeding with the case "would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision"); *cf. Bell v. Merchants Bank of Ind.*, No. 1:18-cv-56, 2018 WL 10320583 (S.D. Ind. May 18, 2018) (finding a stay warranted where the decision in another trial court would simplify the issues in the case).

tortious intent when intercepting communications. Put differently, whether a defendant is absolved of ECPA liability when it intercepts communications for a marketing or moneymaking purpose—both of which are indisputably lawful.[2] That question, to be sure, may affect this case. If *Stein* interprets the crime-tort exception to require a showing of criminal intent, it may cast doubt on this Court's conclusion that Hannant's allegations plausibly bring her case within it.

Then again, it might not. The *Stein* defendant argues that the ECPA's language—"purpose of committing a criminal or tortious act"—imposes a heightened mens rea requirement. 18 U.S.C. § 2511(2)(d). In other words, the ECPA demands proof that a defendant specifically intended to commit a crime or tort. *See* Brief of Appellant, *Stein v. Edward-Elmhurst Health*, No. 26-1742 (7th Cir. Apr. 10, 2026), Dkt. 9 at 24–26. But that view does not cast doubt on the viability of Hannant's legal theory to begin with. The *Stein* defendant does not dispute that the crime-tort exception may be predicated on a violation of HIPAA. *See id.* at 36–37 (arguing that an ECPA claim based on HIPAA "requires plausible allegations of a purpose to violate HIPAA itself"). So even if the Seventh Circuit agrees with the *Stein* defendant, its ruling would not compel dismissal of Hannant's ECPA claim; it would simply clarify her burden of proof.

---

[2] The district court in *Stein* put the certified question like this: "Whether the crime-tort exception to the one-party consent rule in the Electronic Communications Privacy Act applies when a complaint alleges that the defendant acted with a lawful purpose, and does not allege that a defendant acted with a criminal or tortious purpose?" *Stein v. Edward-Elmhurst Health*, No. 1:23-cv-14515 (N.D. Ill. Oct. 4, 2023), Dkt. 71 at 7.

Even so, Hannant's complaint alleges two state-law negligence claims that would be left undisturbed by *Stein*. So even if *Stein* is resolved in Culbertson's favor, and even if the Seventh Circuit's rationale undermines this Court's previous order, two live claims would remain. It would be unwise—not to mention unjust—to stay a case that has been pending for two years based on the possibility that a separate case may dispose of one-third of the plaintiff's claims.

Culbertson is well aware of this and advances the following argument. If the Seventh Circuit rules in its favor, and if Hannant's ECPA claim is dismissed, this Court may ultimately lack jurisdiction over Hannant's state-law claims. According to Culbertson, the Class Action Fairness Act ("CAFA") may not apply to a regional hospital such as Culbertson. If that proves correct, the Court could then decline to exercise supplemental jurisdiction over the remaining state-law claims in the absence of any federal claim. *See* 28 U.S.C. § 1367(c)(3).[3]

The difficulty with Culbertson's argument lies in the number of contingencies on which it depends. Before *Stein* could dispose of this case, several independent conditions must first come to pass, and none is certain to occur. It is possible that events will unfold as Culbertson anticipates and that *Stein* will ultimately produce the jurisdictional consequences Culbertson identifies. But those outcomes remain speculative. The Court cannot predict how the Seventh Circuit will rule, whether the ECPA claim will ultimately be dismissed, whether CAFA will apply, or whether the

---

[3] The CAFA and supplemental jurisdiction issues have not been briefed or argued, nor have the parties conducted discovery into them. It would thus be inappropriate to resolve them now. Should Culbertson wish to challenge jurisdiction at some later point, it may freely do so.

Court would decline to exercise supplemental jurisdiction if only state-law claims remained. Because the requested stay rests on a series of uncertain contingencies rather than reasonably certain future events, the Court declines to exercise its discretion to stay these proceedings.

That conclusion is reinforced by the practical realities of this case. This action has been pending for nearly two years, yet discovery has not begun. Moreover, as Hannant acknowledges, her negligence claims arise from the same alleged conduct underlying her ECPA claims—namely, Culbertson's use of website-tracking technology and the disclosure of visitor information to third-party advertisers. As a result, discovery relevant to the ECPA claims will substantially overlap with discovery relevant to the negligence claims. Thus, even if *Stein* is decided in Culbertson's favor and ultimately requires dismissal of Hannant's ECPA claims, the discovery conducted in the meantime would remain relevant to the surviving state-law claims and therefore would not be wasted.

In short, a stay departs from the usual rule that litigation, once begun, must proceed. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. A pending appeal in a separate case may justify that departure. But not here. *Stein* is too attenuated from these proceedings. It's unclear whether or to what extent *Stein* will affect this case. And it's far from guaranteed that *Stein* will end it.

7

## CONCLUSION

IT IS THEREFORE ORDERED that Culbertson's Motion to Stay, (Doc. 44), is DENIED. The Rule 16 conference previously vacated will be set for August 28, 2026, at 10:45 a.m. via telephone before Magistrate Judge Ronald L. Hanna. Counsel are to phone into conference by calling (551) 285-1373 and enter the Meeting ID: 16095893703# when prompted to do so. Please announce your name prior to speaking unless the judge asks a question directly to you so that the speaker may be identified by all. A discovery plan pursuant to Fed. R. Civ. P. 26(f)(3) shall be filed on or before August 25, 2026. All counsel must read and be familiar with Judge Hanna's Standing Order, dated October 28, 2025, which can be found on the Central District of Illinois website (www.ilcd.uscourts.gov) under Clerks office/Local rules and Orders/Orders & Rules by Judge prior to their Rule 26(f) planning meeting.

*So ordered.*

Entered this 27th day of July 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

8